## ROGER ROBERT GARDNER *v.* STATE OF MARYLAND

[No. 1159, September Term, 1975.]

*Decided September 15, 1976.*

The cause was argued before ROBERT C. MURPHY, Chief Judge of the Court of Appeals, ROBERT E. CLAPP, JR.,

Associate Judge of the Sixth Judicial Circuit, and ROBERT L. KARWACKI, Associate Judge of the Eighth Judicial Circuit, all specially assigned.

*Daniel W. Moylan,* with whom were *Edwin F. Nikirk* and *George S. Morgan* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Gilbert Rosenthal, Assistant Attorney General,* and *Robert S. Rothenhoefer, State's Attorney for Frederick County,* on the brief, for appellee.

KARWACKI, J., delivered the opinion of the Court.

The Appellant seeks reversal of his conviction of possession of marijuana with intent to distribute by the Circuit Court for Frederick County (Samuel W. Barrick, J.) on September 3, 1975 for which he was sentenced to five years under the jurisdiction of the Division of Correction and fined $10,000. The sole issue which he raises on this appeal is the propriety of the trial court's denial of his pretrial motion to suppress evidence seized by the Maryland State Police on February 14, 1975 from a cabin he had leased in Frederick County. The seizure of that evidence, consisting of a large quantity of marijuana and a banana-shaped pipe containing a marijuana residue, took place in the course of a warrantless search of that cabin by the police.

Since this Court is required to examine the entire record of the proceedings before the trial court at the hearing on the motion to suppress, *Glover v. State,* 14 Md. App. 454, 287 A. 2d 333 (1972), and to make an independent reflective constitutional judgment of the facts to assess the issue of whether the evidence in question was obtained in violation of the Fourth Amendment's guarantee, *Davis v. North Carolina,* 384 U. S. 737, 741 (1966); *Whitman v. State,* 25 Md. App. 428, 435, 336 A. 2d 515 (1975), we will set forth in some detail the events preceding the seizure as described by the witnesses who testified before the trial court on the motion.

On February 13, 1975, the Appellant leased an A-frame cabin located in a wooded mountainous area near Wolfsville in Frederick County from the owner with whom he was acquainted. He went to the cabin briefly that day and after checking it over left and did not return until the next afternoon at approximately 3 p.m.

William W. Russell, Jr., a realtor with whom the cabin had been listed by its owner for rent, took an interested client to see the two-story A-frame structure on the morning of February 14, 1975 at approximately 10:30 a.m. unaware that the premises had been previously rented directly by the owner to the Appellant. Mr. Russell proceeded to show the entire cabin to the client and when they went upstairs Russell and the client observed some burlap bags on the floor that appeared to be "a bunch of trash". Russell related that he and the client opened the flap on one of the bags and found therein numerous bundles the size of bread loaves. One of the bundles was split open and the client took a bit of the substance from within that bag and examined the same with his fingers. Neither Russell nor the client professed any expertise with regard to controlled dangerous substances but they concurred at that point in a suspicion that the substance which they had discovered was marijuana. Upon further inspection of the downstairs, Russell and the client opened the doors of a Ben Franklin stove and observed that it was loaded with stems of weeds that the client remarked "was probably part of the stuff that was upstairs". At this point they left the cabin and after taking a look at the grounds, parted company, Russell returning to his office. On arriving there, Russell related these events to Mr. Renn, a realtor with whom he was associated advising Renn that the client was interested in renting the cabin but only after the suspicious substance which had been discovered there was removed. After this discussion the State Police were called at the suggestion of Renn and Trooper Paul J. Gerstner interviewed Russell at the realty company at about noon the same day. Russell advised the trooper of what had occurred that morning at the cabin and stated that although he could not identify the suspicious substance discovered there for certain "I thought possibly it might be marijuana".

At approximately 4 o'clock that afternoon Trooper Gerstner accompanied by Trooper Ronald Herring and Detective Sergeant Charles L. Hubbell of the Maryland State Police contacted Russell again and asked him to show them where the cabin was located. At this time Russell informed the police that he had just learned from the owner of the cabin that it had been rented directly by the owner to the Appellant the day before. The troopers indicated when Russell joined them that "they would like to go up immediately and if it was necessary they could obtain a search warrant".

However, a warrant was not obtained and the police and Russell arrived at the cabin at about 5:55 p.m. A car was parked outside and there were lights on inside. From this point forward the testimony of the witnesses is not consistent, and we set forth the facts as determined from the conflicting testimony by the trial court sitting as trier of the facts at the hearing on this motion. *Johnson v. State*, 30 Md. App. 280, 352 A. 2d 349 (1976).[1] When the troopers knocked on the cabin door it was opened by the Appellant. One of the troopers presented his identification and stated that they were State Police and would like to come in. The Appellant

---

1. The trial court relied principally upon the testimony of Russell and to a lesser degree upon that of Detective Sergeant Hubbell and Troopers Gerstner and Herring and the decision by that court on the motion to suppress was determined upon the facts as they represented them. As Judge Moylan stated for this Court in *Walker v. State*, 12 Md. App. 684, 695, 280 A. 2d 260 (1971) and as this Court reiterated in *Whitman v. State, supra* at 435:

> "What we mean, therefore, when we say that we have the obligation to make an independent, reflective constitutional judgment on the facts whenever a claim of a constitutionally-protected right is involved is that, although we give great weight to the findings of the hearing judge as to specific, first-level facts ... we must make our own independent judgment as to what to make of those facts; we must in making that independent judgment, resolve for ourselves the ultimate, second-level fact ...."

Accordingly, we give appropriate and substantial effect to the trial court's resolutions of conflicts in evidence as to the occurrence or non-occurrence of the factual events and happenings. Therefore, we decide the issue on this appeal under the first-level facts as accepted by the trial court.

stepped back as if to gesture an invitation to come in and the officers and Mr. Russell' entered the cabin.[2] After they entered, the initial conversation centered on the Appellant's right to be in the cabin. When the Appellant defended his possession and repeatedly requested the troopers to telephone the owner and verify his tenancy, the conversation shifted and the troopers asked the Appellant if they could look around. They advised him that he did not have to let them look around, and that if it was necessary they could get a search warrant. The Appellant responded "If the real estate people didn't call you then why are you here?" And Sgt. Hubbell said, "We have reason to believe there's a supply of marijuana or related substance in the second floor and we would like to look". During this conversation Trooper Gerstner was standing behind Trooper Herring, and next to the Ben Franklin stove. Trooper Gerstner picked up a piece of a stem that was in front of the stove on the floor and said "it wouldn't be very hard to get a search warrant with this type of evidence". The Appellant responded "in that case maybe you should get a search warrant".

Trooper Herring asked the Appellant for some identification with which to apply for a search warrant and sat down at a table to record it. While examining the identification, he noticed a banana-shaped pipe on the table. He picked it up, smelled it and examined it. He then placed the Appellant under arrest for possession of marijuana. The Appellant retired to the other side of the room, sat down on a chair and made the statement, "I think you fellows know more about what's going on around here than I do; you may as well look upstairs". The Appellant was then handcuffed to a chair and two of the troopers went upstairs.[3] They then

---

**2.** Appellant testified that he asked if the police had a warrant, that they said that they didn't need one because they were with the real estate agent who had control over the premises and that they just walked into the living room. He consistently maintained that he never consented to their entry of the cabin or their search thereof insisting at all times that his private residence could not be entered and searched without a warrant.

**3.** The troopers did not first request the Appellant to execute the written consent form which is regularly employed by the Maryland State Police in

called down and told the Appellant he was also under arrest for possession of marijuana with intent to distribute. The substance found on the second floor of the house was subsequently identified as approximately 584 pounds of marijuana.

The sole justification offered by the State for warrantless search and seizure in this case is that it was voluntarily consented to by the Appellant. Since we are of the view that the search and seizure cannot be justified on this theory, we must reverse the conviction and remand this case to the Circuit Court for Frederick County for a new trial.

In *Bumper v. North Carolina,* 391 U. S. 543 (1968), *Schneckloth v. Bustamonte,* 412 U. S. 218 (1973), and *U. S. v. Watson,* 423 U. S. 411 (1976), the Supreme Court has mandated the scrutiny which must be applied to an alleged voluntary consent by a citizen to a search by a governmental authority otherwise prohibited by the Fourth and Fourteenth Amendments to the U.S. Constitution. As Mr. Justice Stewart writing for the Court in *Schneckloth* stated:

" . . . it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced. It is this careful sifting of the unique facts and circumstances of each case that is evidenced in our prior decisions involving consent searches." at p. 233.

This Court in *Whitman v. State, supra,* following such an analysis reversed a conviction for illegally transporting

---

Frederick County in warrantless search cases. It contains the following explanation:

"I fully understand that I need not consent to this search and that the items seized may be used against me in a court trial. I further understand that I have the right to withdraw my consent at any time and require any further search to be executed on the strength of a legal search warrant.

This consent has been given by me to the above named officer knowingly and voluntarily and absent of any threats, promises or inducements of any kind."

cigarettes without the required Maryland cigarette stamps. The defendant was followed from North Carolina by a police informant. When he entered Maryland the defendant was stopped by Maryland State police at approximately 1:30 a.m. He was arrested and given his *Miranda* warnings. At this point one of the officers requested the defendant's permission to search the defendant's truck which the defendant refused. The defendant and the truck were taken into custody and transported to a State Roads Barn. The troopers joined by other investigators again requested the defendant's consent to search. When he again refused, they told him that they would get a warrant and they began the process. Soon thereafter the defendant relented and opened the vehicle for the police. In holding that this did not constitute a valid consent search, this Court stated:

> "While each case must rest for decision upon its own facts and the 'totality of the circumstances,' an arrest without probable cause followed by custodial prodding for the arrestee's consent to a search, combined with police representations that the issuance of a warrant will be practically automatic — these are circumstances calculated only to persuade the individual that insistence upon Fourth Amendment guarantees will secure for him merely a delay of the inevitable search rather than the protection against unreasonable search and seizure to which he is constitutionally entitled. Such a melange of fact and circumstance as was here presented is, we think, inherently coercive." Id., at p. 456

We believe this holding in *Whitman* to be dispositive of the instant case.

The record supports the trial court's finding that the officers' initial entry into the cabin was permissive in nature. However, permission to enter cannot be equated with a voluntary consent to search the premises. To the contrary, in this case it is manifest from the record that after the Appellant invited the officers to enter the premises

he insisted that they obtain a warrant before searching the premises for suspected marijuana. An invitation across the threshold of a fixed premises without warrant will not justify a general exploratory search of that premises. *Brown v. State*, 15 Md. App. 584, 292 A. 2d 762 (1972). Legally across the threshold of the Appellant's home the troopers first unsuccessfully attempted to elicit from the Appellant his consent to their search of the premises for a cache of marijuana, principally by assuring him that his resistence to that search would only delay the inevitable since a search warrant "wouldn't be very hard to get". When Appellant resisted these importunings, the troopers then placed him under arrest following Trooper Herring's seizure of the banana-shaped pipe and his conclusion that the bowl thereof smelled of marijuana. The State's claim that the arrest was justified because Officer Herring smelled the odor of marijuana in the banana-shaped pipe will not pass muster. Accepting the first level fact found by the trial court of a valid intrusion by the police officers upon the first floor of the premises and the fact that the banana-shaped pipe was in open view, the plain view doctrine authorizing warrantless seizures of evidence of crime explicated in *Coolidge v. New Hampshire*, 403 U. S. 443 (1971) and discussed by this Court in *Brown v. State, supra,* did not justify the seizure of the pipe for the purpose of searching it by smelling the bowl for incriminating evidence. *Wilson v. State*, 30 Md. App. 242, 351 A. 2d 437 (1976). In *Wilson*, this Court rejected application of the plain view doctrine to seizure of suspected stolen goods for the purpose of copying serial numbers therefrom while police officers were legally upon a fixed premises in execution of a search warrant issued for suspected narcotics located there. Judge Lowe there stated for this Court:

> "Just as the 'plain view' doctrine will not justify the seizure of suspicious articles which are not obviously 'evidence' of a crime, it will also not justify the copying of serial numbers from articles found on the premises, but unrelated to the object of a search, in order to determine later whether

they are stolen goods . . . It is not the subsequent seizure we find abhorrent, but rather the rummaging about as if under a general warrant, in hopes of finding something illicit. It was not 'immediately apparent' to the officer that the goods he listed were stolen, even if their quantity did arouse suspicion." Id., at p. 250

The examination and smelling of the pipe to determine its contents is as much a search as was the subsequent investigation in *Wilson, supra,* to determine if the stereo equipment was stolen.[4] The pipe sitting alone on the table was totally innocent in nature. It was not immediately apparent to the officers that what they were observing was seizable evidence. The mere suspicion of the officer that marijuana might be found in the pipe could not justify his seizure of it and search of it by smelling without a validly obtained warrant. Since the Appellant's arrest was supported for its probable cause by the fruits of the search which followed this illegal seizure, it was the fruit of this illegality and hence invalid. *Everhart v. State,* 274 Md. 459, 337 A. 2d 100 (1975).

---

4. Cf. *Dixon v. State,* 23 Md. App. 19, 327 A. 2d 516 (1974), where this Court held pills seized from a car during police inventory search inadmissible under the plain view doctrine where the officer making the inventory check had no probable cause to believe that the items ultimately seized were contraband or other evidence of crime. Also see *Shipman v. State of Alabama,* 232 So. 2d 700 (1973) holding the seizure of heroin from the defendant invalid under the plain view doctrine where the arresting officer had no idea what the white substance in the cellophane package he saw contained, *Nicholas v. State of Texas,* 502 S.W.2d 169 (1973), holding the seizure of photographic negatives from defendant's apartment invalid under the plain view doctrine where the seizing officers had to examine the negatives through a light before they became aware that the films might be evidence of crime; *State of Louisiana v. Meichel,* 290 So. 2d 878 (1974), where seizure of pill bottle held invalid under the plain view doctrine where officer did not know the nature of the pills until after he picked up the bottle and examined it; and *State of Louisiana v. Navarro,* 312 So. 2d 848 (1975), holding seizure of plastic bag of marijuana invalid under the plain view doctrine where the officer saw plastic bag protruding from automobile sun visor but could not ascertain the contents of the bag until he pulled down the visor; and the concurring opinion of Mr. Justice Stewart in *Stanley v. Georgia,* 394 U. S. 557 (1969) where police officers legally upon defendant's premises in execution of a search warrant issued to investigate bookmaking activities came upon motion picture film which they examined and determined obscene, this film being incriminating evidence in defendant's subsequent conviction for possession of pornographic materials.

We are persuaded that the coercive factors substantially outweigh the non-coercive ones, and therefore conclude that under the totality of the circumstances presented here there was no more than acquiescence by the Appellant to a claim of lawful authority by the State Police in submitting to the search of his premises. So concluding, we hold that the State has not met the burden imposed upon it to establish that the Appellant freely and voluntarily abdicated his right to demand that his house not be searched until the probable cause for that search was first submitted for judicial evaluation.

*Judgment reversed; case remanded for a new trial; costs to be paid by Frederick County.*