## STATE OF MARYLAND *v.* RAYFIELD ZEKE WILSON

[No. 26, September Term, 1976.]

*Decided January 24, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellant.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

We granted certiorari in this case to consider whether the finding and taking of serial numbers from certain equipment during a search for narcotics, conducted pursuant to a valid warrant, was an unconstitutional search and seizure. On appeal from appellee's conviction for receiving

stolen goods in the Circuit Court for Prince George's County, the Court of Special Appeals, in *Wilson v. State*, 30 Md. App. 242, 252, 351 A. 2d 437 (1976), held that a police officer violated appellee's rights under the Fourth Amendment by engaging in an illegal search and in unlawfully seizing the serial numbers, and that the State had failed to meet its burden of showing that consent to the subsequent seizure of the equipment was freely and voluntarily given. Since we agree with the Court of Special Appeals, we shall affirm.

The events leading to the arrest and prosecution of appellee began on the evening of June 18, 1974, at the residence in Carmody Hills which he shared with several people. A Prince George's County police officer, acting as a "back-up," accompanied federal agents to this residence, where the agents were to execute a valid search warrant for narcotics and narcotics paraphernalia. While the agents searched downstairs, the county officer searched appellee's upstairs bedroom. He observed that "sitting on top of the drawer, the dressers, on the floors" were "[s]omewhere around twenty, twenty-five" items, consisting of "various t.v. sets, stereo equipment, speakers, one or two clock radios, camera and various items in the house." The officer "looked over" these items and "jotted down the serial numbers of all of them." Then, during "the last ten minutes [the officer] was in the bedroom," the federal agents also searched the room. To conduct their narcotics search, the agents "would . . . have moved some of these items anyway."

After a thorough search, the federal agents departed empty-handed, finding neither narcotics nor narcotics paraphernalia, while the police officer left with his list of serial numbers. Later that night, the officer checked the serial numbers against those stored in a national computer system which lists serial numbers of stolen equipment. One number matched, indicating that appellee possessed a Sony cassette tape recorder which had been stolen some 4½ months earlier from an apartment in nearby Lanham. The officer then referred the matter to another division.

On the following day, one Prince George's County police

sergeant and two detectives, although lacking a search warrant, proceeded to appellee's residence. One of appellee's housemates answered the door and invited the policemen inside. On seeing appellee, one detective "approached the Defendant, advised him of his [*Miranda*] rights and explained that the stolen property was observed and verified in his home the night before by the uniformed officer." Asked, then, whether he understood these rights, appellee "acknowledged that he did." Specifying the serial number of the cassette recorder, the police then requested that appellee "relinquish the property." Appellee replied that "[i]t was in his room and he led [the officer] up there." On reaching appellee's room, the detective located the cassette recorder, verified that its serial number matched the one revealed by the computer, seized it, and arrested appellee. The detective observed, in addition to the recorder, "[s]everal stereo items [and] many, many shoes." He further specified two television sets and "at least four stereo units," which "could be receivers, amplifiers, cassettes, tape players or a combination, but there were four separate pieces which could have been off any of the described items." Their assignment completed, the police transported appellee and the recorder to the police station.

Appellee was charged with burglary, housebreaking, grand larceny, and receiving stolen goods. Confronted during the trial by appellee's objection to the introduction of the recorder into evidence, the court (Meloy, J.) ruled that appellee had consented to the seizure of the cassette recorder, and thus found it unnecessary to rule on the legality of the police conduct in copying the serial numbers. After the State abandoned the burglary and one of the receiving stolen goods counts, the jury convicted appellee of receiving stolen goods of the value of $100 or more, and the court sentenced him to a term of six years.

## I

We begin by observing that both the State and appellee, correctly in our view, treat the taking of the serial numbers as a seizure within the meaning of the Fourth Amendment.

*See United States v. Clark,* 531 F. 2d 928, 931-32 (8th Cir. 1976); *United States v. Gray,* 484 F. 2d 352, 356 (6th Cir. 1973), *cert. denied,* 414 U. S. 1158 (1974); *United States v. Sokolow,* 450 F. 2d 324 (5th Cir. 1971) (per curiam); *State v. Murray,* 84 Wash. 2d 527, 527 P. 2d 1303, 1308 (1974), *cert. denied,* 421 U. S. 1004 (1975). Appellee is entitled to Fourth Amendment protection because he did not "knowingly [expose] to the public" either the numbers or the equipment they identified. *Katz v. United States,* 389 U. S. 347, 351, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967). Appellee's expectation of privacy, moreover, was reasonable. *Id.* at 361 (Harlan, J., concurring).

The issue in controversy here is whether the search for the serial numbers and their seizure were lawful. To prevent the issuance of general warrants, the Fourth Amendment requires that a warrant "particularly [describe] the place to be searched, and the persons or things to be seized." The warrant which was issued here mentioned only narcotics and narcotics paraphernalia. Manifestly, then, the seizure of the serial numbers cannot be justified under the terms of the warrant.

Moreover, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States, supra,* 389 U. S. at 357 (footnotes omitted). To sustain the seizure here, therefore, the State must shoulder the heavy burden of showing that one of the exceptions applies. *Coolidge v. New Hampshire,* 403 U. S. 443, 455, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Vale v. Louisiana,* 399 U. S. 30, 34, 90 S. Ct. 1969, 26 L.Ed.2d 409 (1970).

II

The State contends, first, that the seizure was valid under the "plain view" exception enunciated in the plurality opinion in *Coolidge v. New Hampshire, supra,* 403 U. S. at 464-73. This doctrine serves to supplement a previously justified intrusion, such as a search warrant for other

property, and permits a warrantless seizure. *Id.* at 466. The exception, on the other hand, may not be used to expand a justified, but limited, intrusion into a general exploratory search of a person's belongings until something incriminating at last emerges. *Id.* at 466-67. To confine the exception within these boundaries, the Court prohibited the use of any evidence seized outside the warrant unless (1) the police have a prior justification for the intrusion; (2) they find the evidence in plain view; (3) they find it inadvertently; and (4) it is "immediately apparent to the police that they have evidence before them," *id.* at 466-71. *Accord, United States v. Johnson,* 541 F. 2d 1311, 1316 (8th Cir. 1976); *United States v. Clark, supra,* 531 F. 2d at 932; *United States v. Wilson,* 524 F. 2d 595, 598 (8th Cir. 1975), *cert. denied,* 424 U. S. 945 (1976); *State v. Keefe,* 13 Wash. App. 829, 537 P. 2d 795, 797 (1975).

Appellee contends that neither the third nor fourth requirement imposed by *Coolidge* for application of the "plain view" exception has been met here. In our view, it is unnecessary to consider the "inadvertence" requirement, since, in any event, it was not "immediately apparent to the police that they [had] evidence before them." This element, in essence, amounts to a requirement that police have probable cause to believe the evidence is incriminating before they seize it. As the court said in *United States v. Gray, supra,* 484 F. 2d at 356, "[I]t must be 'immediately apparent' to the police that the object is in fact incriminating or the seizure of the object would be without probable cause and would turn the search into a general or exploratory one." *Accord, United States v. Clark, supra,* 531 F. 2d at 932; *United States v. Wilson, supra,* 524 F. 2d at 598-99; *United States v. Truitt,* 521 F. 2d 1174, 1176 (6th Cir. 1975); *see United States v. Golay,* 502 F. 2d 182, 184-86 (8th Cir. 1974). Stated another way, to be subject to seizure, the object must be one for which the police could have obtained a warrant because they had probable cause. *Coolidge v. New Hampshire, supra,* 403 U. S. at 467-68.

In the context of another exception to the warrant requirement, the "hot pursuit" doctrine, the Supreme Court

has indicated what information a police officer must possess before he can be said to have probable cause to seize evidence:

> "... There must, of course, be a *nexus* — automatically provided in the case of fruits, instrumentalities or contraband — *between the item to be seized and criminal behavior.* Thus in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden v. Hayden,* 387 U. S. 294, 307, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967) (emphasis added).

This standard has also been used to determine whether probable cause existed to seize articles in plain view. *See, e.g., United States v. Golay, supra,* 502 F. 2d at 185; *United States v. Maude,* 481 F. 2d 1062, 1071-72, n. 73 (D.C. Cir. 1973). *See also United States v. Sedillo,* 496 F. 2d 151, 152-53 (9th Cir.) (Hufstedler, J., dissenting), *cert. denied,* 419 U. S. 947 (1974).

In *Hayden,* of course, the Court held that mere evidence, as well as fruits, instrumentalities, and contraband, may be seized under certain circumstances. Under the *Hayden* formulation, so long as police have probable cause to believe that what they see is contraband, or the fruit or instrumentality of some unspecified criminal activity, they may seize the object. *See, e.g., United States v. Golay, supra,* 502 F. 2d at 184-86 (fruits and instrumentalities); *United States v. Canestri,* 518 F. 2d 269, 274-75 (2d Cir. 1975) (contraband); *United States v. Lopez-Ortiz,* 492 F. 2d 109, 111 (5th Cir. 1974) (contraband). Where, however, they possess probable cause to believe that the object is mere evidence, officers may seize it as an aid in a particular apprehension or conviction. *See, e.g., Mapp v. Warden, N.Y. State Corr. Inst., Etc.,* 531 F. 2d 1167, 1172 (2d Cir. 1976); *United States v. Jones,* 518 F. 2d 384, 390-92 (7th Cir.) (Swygert, J., dissenting), *cert. denied,* 423 U. S. 997 (1975); *United States v. Damitz,* 495 F. 2d 50, 56 (9th Cir. 1974).

These standards furnish guidelines to determine the ultimate issue, whether an officer of reasonable caution would be warranted in believing that an offense is being or has been committed and that the object is evidence incriminating the accused. *United States v. Truitt, supra,* 521 F. 2d at 1177.

Whether we regard the cassette recorder as the "fruit of crime" or "mere evidence," the record fails to support the State's contention that the officer possessed probable cause to seize the serial numbers. In support of its claim, the State first urges that since drug users frequently deal in stolen goods to support their habit, the officer possessed probable cause to believe the equipment was stolen. This "nexus," standing alone, is too remote in this case to establish probable cause. The cases upon which the State relies are all distinguishable.[1] In each instance, either the same or a similar kind of criminal conduct was involved. Although finding the articles named in the search warrant is not an essential element of the nexus argument, *see, e.g., United States v. Golay, supra,* we observe that here the agents and officer found neither the narcotics nor the paraphernalia named in the warrant.

The State also argues that the large quantity of equipment observed in appellee's bedroom created probable cause. In our view, however, the record justifies no more than a mere suspicion that any of the goods were stolen. It is important to recognize that although the officer observed a total of 20 to 25 items, they were of many varieties: "various t.v. sets, stereo equipment, speakers, one or two clock radios, camera and various items in the house." *Cf. Comi v. State,* 26 Md. App. 511, 519, 338 A. 2d 918, *cert. denied,* 276 Md. 740 (1975).

---

1. Payne v. United States, 508 F. 2d 1391, 1395 (5th Cir.), *cert. denied,* 423 U. S. 933 (1975) (dictum), United States v. Golay, 502 F. 2d 182, 185 (8th Cir. 1974), Aron v. United States, 382 F. 2d 965, 973-74 (8th Cir. 1967), Brooks v. State, 235 Md. 23, 28-30, 200 A. 2d 177 (1964), Comi v. State, 26 Md. App. 511, 517, 519, 338 A. 2d 918, *cert. denied,* 276 Md. 740 (1975), Gerstein v. State, 10 Md. App. 322, 332, 270 A. 2d 331 (1970), *cert. denied,* 260 Md. 720, 402 U.S. 1009 (1971), and Anglin v. State, 1 Md. App. 85, 88, 227 A. 2d 364, *cert. denied,* 246 Md. 757 (1967), *on petition for writ of habeas corpus,* 439 F. 2d 1342 (4th Cir.), *cert. denied,* 404 U. S. 946 (1971).

Relying heavily on *Crawford v. State*, 9 Md. App. 624, 626, 267 A. 2d 317 (1970), the State argues, finally, that these two factors — the quantity of items and the nexus to the narcotics search — taken together, created probable cause. Because we regard *Crawford* as distinguishable, however, we disagree. There, in addition to finding the narcotics paraphernalia for which the warrant had been issued, the police found approximately 30 pawn tickets. These tickets immediately suggested a repeated course of conduct to obtain cash necessary to purchase narcotics. In contrast, the State has failed to show any connection here between possession of the items and receipt of cash; indeed, since no narcotics were discovered, the State has also failed to link the supposed need for cash to possession of narcotics.

Other courts, on facts which parallel those found here, have held the seizure of serial numbers to be invalid. *United States v. Clark, supra,* 531 F. 2d at 931-33 (serial numbers of firearms seized during search for narcotics); *United States v. Gray, supra,* 484 F. 2d at 355-56 (serial numbers of firearms seized during search for unlicensed liquor); *United States v. Sokolow, supra,* 450 F. 2d at 326 (seizure of serial numbers of air conditioning units during arrest for stolen cigarettes); *State v. Murray, supra,* 527 P. 2d at 1306-08 (serial number of television seized during consent search for stolen items other than televisions). In each of those cases, as in this case, the incriminating nature of the evidence became apparent only after seizure of the serial number.

We hold that seizure of the serial number was not justified under the plain view doctrine.

### III

The State argues that even if the officer lacked probable cause to believe the equipment was stolen, the seizure of the serial number was justified under another exception to the general rule proscribing warrantless searches. The State premises this contention on the ground that the Fourth Amendment prohibits "unreasonable" searches and seizures. Stressing that the officer's action neither deprived appellee of possession of the equipment nor required that it be moved

any more than was necessary to conduct the valid search for narcotics, the State maintains that the search and seizure here meets the standard of reasonableness established in *Terry v. Ohio*, 392 U. S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). That standard is met, the State suggests, when the specific and articulable facts available to the officer at the moment of the search and seizure would warrant a man of reasonable caution to believe that the action taken was appropriate. *Id.* at 21-22.

The State's argument, however, misconceives *Terry's* narrow scope. In *Terry*, and in its companion case, *Sibron v. New York*, 392 U. S. 40, 88 S. Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court addressed the constitutionality of "stop and frisk." To determine the validity of this form of police conduct, the Court balanced the need to search and seize against the invasion which the stop and frisk entails. On one hand lies the interest in effective crime prevention and detection. For the Court, however, the "crux" of the case was the "more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him." *Terry v. Ohio, supra,* 392 U. S. at 23. The Court recognized, on the other hand, that even a limited search of the outer clothing for weapons "constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humilitating experience." *Id.* at 24-25. Balancing these competing interests, the Court held that even absent probable cause to arrest, a police officer's stop and frisk is reasonable where he reasonably concludes that "criminal activity may be afoot." *Id.* at 30. His conclusion must be founded on "specific and articulable facts" and "rational inferences," and be measured by an objective standard. *Id.* at 21. The officer must also have reason to believe that he is dealing with an armed and dangerous individual. *Id.* at 27. And finally, the search must be a "carefully limited search of the outer clothing . . . to discover weapons which might be used to assault" the officer. *Id.* at 30.

In *Sibron* the Court indicated how narrowly *Terry* was to be read. There, the Court struck down a conviction based on narcotics which had been found in Sibron's pocket when he was "frisked" outside a restaurant late one night. The only basis for stopping him was the officer's observation over an eight hour period of Sibron's conversations with several persons whom the officer knew to be addicts. The Court found that if the patrolman lacked probable cause for an arrest, "his seizure and search of Sibron might still have been justified at the outset if he had reasonable grounds to believe that Sibron was armed and dangerous." *Sibron v. New York, supra,* 392 U. S. at 63. On the facts, however, the officer apparently was never in fear of bodily harm during the encounter. The Court believed, moreover, that even if there were adequate grounds to search Sibron for weapons,

> ". . . [t]he search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception — the *protection of the officer* by disarming a potentially dangerous man." *Id.* at 65 (emphasis added).

The narrow exception established in *Terry* and *Sibron* may have been expanded somewhat by *Adams v. Williams,* 407 U. S. 143, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972). There, although appearing to apply the *Terry* standards, the Court may have applied less stringent requirements to justify the initial forcible stop. Nevertheless, the teaching of *Adams* that is important here is that "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation *without fear of violence* . . . ." 407 U. S. at 146 (emphasis added). These cases, of course, involved searches on the street rather than in the home, but even when the *Terry* exception has been applied to warrantless searches in the home, the purpose and scope of the search have been similarly limited to ensuring the officer's safety. *Compare, e.g., United States v. Clark, supra,* 531 F. 2d at 931, 933, *and United States v. Boswell,* 347 A. 2d 270, 275-76 (D.C. 1975), *with McGeehan v. Wainwright,* 526

F. 2d 397, 399-400 (5th Cir.) (per curiam), *cert. denied,* 425 U. S. 997 (1976), *and United States v. Briddle,* 436 F. 2d 4, 7 (8th Cir. 1970), *cert. denied,* 401 U. S. 921 (1971).

Each case must be decided on its own facts, *Terry v. Ohio, supra,* 392 U. S. at 30, and on the record here the State's reliance on the *Terry* exception is inapposite. Not only was the officer searching for evidence of crime without probable cause, but also there is not the slightest suggestion in the record that either he or any of the agents whom he accompanied were concerned about their physical safety.[2]

## IV

The State contends that yet a third exception to the general rule prohibiting warrantless searches is applicable here. It posits that even if seizure of the serial numbers was unlawful, appellee consented to the seizure of the recorder itself on the second day. Initially, we observe that the State bears the burden of proving that:

> ". . . consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances . . . ." *Schneckloth v. Bustamonte,* 412 U. S. 218, 248-49, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973).

*Bumper v. North Carolina,* 391 U. S. 543, 548, 88 S. Ct. 1788, 20 L.Ed.2d 797 (1968); *Whitman v. State,* 25 Md. App. 428, 437, 336 A. 2d 515 (1975). Moreover, the State must prove voluntariness by a preponderance of the evidence. *See Lego v. Twomey,* 404 U. S. 477, 488-89, 92 S. Ct. 619, 30 L.Ed.2d

---

**2.** The State's reliance on United States v. Powers, 439 F. 2d 373 (4th Cir.) *cert. denied,* 402 U. S. 1011 (1971), for the proposition that seizure of a serial number is an appropriate response in the situation, is misplaced. *Powers* held that once police became aware that an automobile's vehicle identification number was missing from the doorpost, they could search barely accessible areas of the car to ascertain that number. Automobile identification numbers are in a class by themselves, since they are, as the court said, "at the least, quasi-public information." *Id.* at 375.

Moreover, United States v. Golay, 502 F. 2d 182 (8th Cir. 1974) and State v. Proctor, 12 Wash. App. 274, 529 P. 2d 472, 474 (1974), are inapposite because in those cases the police had probable cause to believe they were looking at fruits of criminal activity, and thus the items were immediately seizable. *Cf.* State v. Keefe, 13 Wash. App. 829, 537 P. 2d 795, 798 (1975).

618 (1972). *But see, e.g., United States v. Jones,* 475 F. 2d 723, 728 (5th Cir.), *cert. denied,* 414 U. S. 841 (1973) (clear and convincing evidence required). On appeal, we examine the entire record and make an independent determination of the ultimate issue of voluntariness. *Davis v. North Carolina,* 384 U. S. 737, 741-42, 86 S. Ct. 1761, 16 L.Ed.2d 895 (1966) (confessions); *Gardner v. State,* 32 Md. App. 629, 630, 363 A. 2d 616 (1976); *Whitman v. State, supra,* 25 Md. App. at 435.

We think the State has failed to prove that appellee voluntarily consented to the second search. We are mindful, in this regard, of the Supreme Court's admonition:

> ". . . In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth v. Bustamonte, supra,* 412 U. S. at 229.

The State has suggested several factors which, it argues, demonstrate that appellee voluntarily consented. At no time prior to seizure of the recorder itself was appellee in custody, although *Miranda* warnings had been issued. Moreover, appellee was in his own home and some of his housemates, including his landlord, were present. Appellee informed the officer that the recorder was in his bedroom and led him there.

As we see it, however, the circumstances surrounding the seizure demonstrate that appellee's consent was obtained by coercion. Three officers — two detectives and their sergeant — arrived at his home. The housemates permitted the officers to walk upstairs, and since the others seemed already to have acquiesced to the officers' request to search the house, appellee apparently reasoned that he had no alternative but to consent. The detective then "advised [appellee] of his constitutional rights." Conspicuously absent from the warnings was any reference to defendant's right not to consent to the search. Concededly, *Schneckloth* does make it clear that although defendant's "knowledge of a

right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth v. Bustamonte, supra,* 412 U. S. at 249. Here, however, the absence of this advice, coupled with the presence of the *Miranda* warnings, may well have led appellee to believe that he had no right to refuse the officers' request.

Next, the police explained their presence by referring to the search conducted by the uniformed officer on the prior evening. Nothing in the record indicates that appellee knew or assumed the search and seizure of the serial numbers to be unlawful. We can only conclude, therefore, that he premised his consent on the assumption that the officer had acted lawfully and within the scope of the warrant. From this premise, appellee could reasonably have understood that the police were continuing to act under the authority granted by the search warrant. The detective's polite but firm request that appellee "relinquish" the cassette recorder may well have buttressed the view in appellee's mind that his only alternatives were either to surrender the equipment cooperatively or to have it taken by force. Implicit, moreover, in the visit by the three officers was the indication that they intended to seize the recorder. Under the circumstances here, "such a police request could be construed as a demand." *People v. Huffman,* 541 P. 2d 1250, 1252 (Colo. 1975). The situation here is analogous to that in which an officer claims to possess a warrant:

> "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has *no right to resist* the search. The situation is instinct with coercion — albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper v. North Carolina, supra,* 391 U. S. at 550 (emphasis added).

*Accord, Whitman v. State, supra,* 25 Md. App. at 437-38.

The illegality of a prior seizure, of course, does not automatically render evidence obtained by a subsequent

consent search inadmissible, but it is a relevant factor to consider in determining the voluntary nature of the consent. *United States v. Hearn,* 496 F. 2d 236, 242 (6th Cir.), *cert. denied,* 419 U. S. 1048 (1974); *accord, Burrows v. Superior Court of San Bernadino County,* 13 Cal. 3d 238, 529 P. 2d 590, 598-99, 118 Cal. Rptr. 166, 174-75 (1974). Those cases in which consent has been held voluntary, however, are distinguishable because in each the prosecution presented strong evidence of consent. In all of them, the suspect consented in writing and, therefore, knew he need not consent. In addition, before consenting, the suspect had either volunteered information, discussed his rights with other persons, or denied knowing either that a crime had been committed or that the evidence sought by the police was in the dwelling. *United States v. Mullens,* 536 F. 2d 997, 999 (2d Cir. 1976); *United States v. Tortorello,* 533 F. 2d 809, 814-15 (2d Cir.), *cert. denied,* 97 S. Ct. 254 (1976); *United States v. Race,* 529 F. 2d 12, 14-15 (1st Cir. 1976); *State v. Niemszyk,* 303 A. 2d 105, 108-09 (Me.), *cert. denied,* 414 U. S. 1042 (1973); *State v. Evans,* 533 P. 2d 1392, 1393-94 (Ore. App. 1975). None of those factors, manifestly, is present here.

As we indicated earlier, account must be taken of subtle police conduct. Here, as in *People v. Superior Court of Marin County,* 13 Cal. 3d 406, 530 P. 2d 585, 587, 118 Cal. Rptr. 617, 619 (1975), "[d]efendant's consent to the search may well have been influenced by knowledge he had already admitted involvement in the crime." He may have understood that possession on the prior day of the recorder, which the police had ascertained by unlawful means to be stolen property, amounted not simply to an admission of "involvement" in criminal conduct, but to overwhelming proof of his guilt.

Since we have concluded that appellee's consent was involuntarily given, we need not reach his second argument that possession of the cassette recorder by the police was, in any event, tainted by the illegal seizure of its serial number. *See generally Brown v. Illinois,* 422 U. S. 590, 95 S. Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 317 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963); *United States v.*

*Tortorello, supra; United States v. Race, supra; State v. Evans, supra.*

## V

What we have already said disposes, in large part, of the State's final contention. In its brief, the State suggested that instead of merely reversing the conviction, the Court of Special Appeals should also have remanded the case for a new trial. The State premised its contention on the bald assertion that it could "quite possibl[y]" establish an independent source for the same information which we have here found to be inadmissible. So too, asserted the State, it is "possible" that the State "might be able" to adduce new evidence on the consent issue. At oral argument, however, the State conceded that it possessed neither an independent source nor additional evidence. Accordingly, we shall not remand for a new trial. *Cf. Johnson v. State,* 30 Md. App. 280, 294-95, 352 A. 2d 349 (1976) (remanded).

> *Judgment of the Court of Special Appeals affirmed; costs to be paid by Prince George's County.*