## Richmond

WILLIAM EDWARD BLAIR

v.

COMMONWEALTH OF VIRGINIA

June 17, 1983.

Record No. 821011.

Present: All the Justices.

*Ralph E. Main, Jr.*, for appellant.
*Robert H. Anderson, III, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In a jury trial under indictments charging grand larceny and breaking and entering with the intent to commit larceny, William Edward Blair was found guilty as charged. The jury fixed his punishment at confinement in the penitentiary for seven years for

each offense and the trial court entered judgment on the verdict. On appeal, the question presented is whether the trial court erred in admitting in evidence, over Blair's objection, a certain gold necklace or chain.[1]

Blair challenges the admissibility of the chain on two grounds. He says the trial court erred in overruling his motion to suppress the chain as the product of an unconstitutional search that exceeded the scope of the search warrant. Furthermore, he argues that the Commonwealth failed to identify the chain as a fruit of the Madison County crimes with which he was charged.

Details of the search were described at the pretrial hearing conducted by the trial court on Blair's motion to suppress evidence. A search warrant was issued by a magistrate in the City of Roanoke on September 18, 1980, at 8:45 p.m. to search "1601 9th St., S.E. also known as Blair's Auto Sales," for one "partial sheet of U. S. Dimes." J. R. Treynor, an investigator in the Sheriff's Department of Botetourt County, had executed the affidavit supporting the search warrant. The affiant based his belief that the coin collection could be found on the described premises upon information furnished by an informer who reported he was present when the burglary was committed and saw the collection "placed in the building" to be searched. The affidavit stated that the search was related to offenses of statutory burglary and grand larceny committed in Giles County on August 17, 1980, when the coin collection was stolen by the informer and others. During the hearing, the informer was identified as Charles Hunnell, a co-defendant. The affiant testified that before executing the affidavit he viewed the building, saw a business sign on the side of it, was unaware that the structure contained an apartment, and intended to obtain a warrant to search the entire building. He further testified that Hunnell said there was much stolen property in the building but could specify only the place from which the coin collection had been taken.

Approximately six to eight police officers from various jurisdictions proceeded to carry out the search on the evening of September 18. The building was a free-standing two-story brick structure located at the corner of 9th Street and Morehead Avenue. The officers entered through a door on 9th Street next to a garage bay

---

[1] On brief, Blair raised other questions not addressed or incorporated by reference in oral argument. We find no merit in his position on these questions and will not discuss them further.

door. There were three large rooms, the first being the garage area in which a car was parked. Behind this area was an office; behind the office and up one or two steps was a storage room. Search of the office failed to reveal the sheet of coins. However, in a trash can in the office the officers found what appeared to be the plastic cover off a sheet of coins. Investigator B. R. Kelly testified that he remembered the "clear, plastic cover" in the trash can, that there "may well have been a holder there for coins," but there "weren't any coins there." Accordingly, the officers continued their search.

They found in the parked vehicle a "C. B. radio," a "walkie-talkie," two crowbars, wirecutters, gloves, a screwdriver, and .38 caliber ammunition. In a pillowcase in the trunk of the car were sterling silver articles, including salt and pepper shakers, a candelabra, two candle holders, and a candy dish. Two pillowcases were in the office; one contained many lapel pins, tie tacks, rings, cufflinks, and similar items, and military identification tags of an individual in Danville named Robertson. The officers, concluding that all this personal property had probably been stolen, seized it.

Having completed their search on the ground floor without finding the dimes, the officers decided, after discussion, that the warrant authorized them to search the entire building, including the upstairs. Having observed that an inside stairway leading to the second floor had been sealed off, they went around the corner and saw a large Blair's Auto Sales sign, similar to the one on 9th Street, no more than a foot to the left of an entrance door on Morehead Avenue. There were garage bay doors on either side of the entrance door; the officers did not see any street number. Carl Wells, Sheriff of Bedford County, recalled that "it was all one building as far as we could determine." Blair, testifying in support of his motion to suppress, said that the sign on the Morehead Avenue side was made of plywood, was four feet by four feet in size, had painted on it "Blair's Auto Sales, 1601 9th Street," and was nailed to the brick wall.

After prying open the side door, the officers went upstairs into what appeared to be an apartment and continued their search. They found and seized a "quantity of sterling silver," a collection of pocket knives, a set of scales, weapons, coins, jewelry, rings, and necklaces. They did not find the sheet of coins. Upon securing the entrance door at the conclusion of their search, the officers for the first time saw over the door a metal street number painted the same color as the "facing and everything else." There was evi-

dence that the apartment was Blair's, that he used it occasionally, but resided with his wife at another location, that other male business associates, including Hunnell, had access to and used it, that the telephone number was the same as the business telephone on the first floor, and that the city directory listed the address, 813 Morehead Avenue, as Blair's Auto Sales. Utility services for the apartment were billed in the name of Blair's Auto Sales.

The articles seized during the search, 622 in number, were inventoried at the time of seizure and subsequently displayed at the Botetourt County Sheriff's office, where victims of larcenies were given the opportunity to examine them and establish claims to ownership. A gold chain found in the search was identified as belonging to Linda Hawkins, of Madison County. The officers could not say whether this jewelry had been discovered downstairs or upstairs during their search of Blair's building.

At trial, Mrs. Hawkins testified that her home had been broken into on Easter Sunday, April 6, 1980, while she and her family were at church. Personal property of a value estimated at $5,300 to $8,600 was stolen. One missing article was a gold chain necklace of hers which had been removed from her jewelry box. She testified that the gold chain seized in the search was "exactly like" that one, having the identical serpentine design and also being broken, as hers was at the time it was taken.

Hunnell, testifying as a witness for the Commonwealth, said that in early 1980 he, Blair, and Blair's brother, Lynn Walker, agreed that they would break into residences, steal valuables, and convert them into cash with which they would buy used cars to repair and resell as if they were engaged in a legitimate profitable business enterprise. Pursuant to this agreement, according to Hunnell, later that year the three of them left Roanoke early on Easter morning, broke into houses in Culpeper, Madison, and Greene Counties, including the Hawkins's residence, stole jewelry and other personal property, and returned with their loot to Blair's Auto Sales.

Blair contends that the officers had no authority to search the upstairs apartment. He says that since the evidence does not show whether the gold chain was found in the lower or upper level of the building the search of both areas must be considered. Relying on *Manley* v. *Commonwealth*, 211 Va. 146, 176 S.E.2d 309 (1970), *cert. denied*, 403 U.S. 936 (1971), Blair argues that the

description in the warrant of the premises to be searched precluded search of the second floor of the building.

In *Manley*, we acknowledged that under the Constitution of the United States and our statutory law a search warrant must describe with specificity the premises to be searched. "All that is required, however, is that the description be such that the officer . . . can, with reasonable effort, ascertain and identify the place intended." *Id.* at 151, 176 S.E.2d at 314. We held valid the search warrant giving the address of the apartment building and the name of the occupant whose apartment was to be searched. *Id.* at 152, 176 S.E.2d at 314. *See also Robinson* v. *Commonwealth*, 219 Va. 520, 248 S.E.2d 786 (1978).

In ruling the search to be valid in the present case, the trial judge stated that from the evidence "everything about the building indicated it was Blair's Auto Sales and . . . this was one building in the eyes of the officers and reasonably so." We cannot say as a matter of law that this ruling was incorrect. The entire building was Blair's; the street number on Morehead Avenue, which was not seen by the officers prior to the search, was painted over in a manner suggesting that it was not in use; a business sign was immediately adjacent to the Morehead Avenue entrance; there were garage doors on each side of that entrance; both levels of the building had the same telephone number; utility services for both levels were billed to the business; and the city directory listed the Morehead Avenue address as Blair's Auto Sales. Accordingly, we will not disturb the ruling of the trial court that the officers had authority under the warrant to search the entire building for the coin collection. *See Steele* v. *United States*, 267 U.S. 498 (1925); *United States* v. *Santore*, 290 F.2d 51 (2d Cir. 1960) (*en banc*), *cert. denied*, 365 U.S. 834 (1961); 2 W. LaFave, Search and Seizure § 4.5(b), at 79 (1978).

The Commonwealth argues that even if the officers technically exceeded the scope of their authority under the search warrant in searching the apartment, their actions should nevertheless be upheld under the "good faith exception" to the exclusionary rule, as articulated in *United States* v. *Williams*, 622 F.2d 830, 840-43 (5th Cir. 1980) (*en banc*), *cert. denied*, 449 U.S. 1127 (1981). We agree that there is no evidence in the record that the officers' conclusion that the search warrant included the entire building was made other than in good faith. The Supreme Court, however, has

not yet established the applicability of a "good faith exception;" therefore, we will not apply such an exception in this case.

■ In their search of the ground floor, the officers found in a trash can what appeared to be a plastic cover for a sheet of coins. One officer said that a coin holder also may have been in the same trash can. The officers were justified, therefore, in continuing to search for the collection of dimes, either on the partial sheet listed in the search warrant or, in view of what was observed in the trash can, as loose coins no longer attached to the sheet.

■ In conducting their search, the officers, being lawfully on the premises under the search warrant, came within the purview of the "plain view" doctrine enunciated by the Supreme Court in the plurality opinion in *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971). While not a binding precedent, the plurality's discussion of "plain view" has generally been followed in the lower courts. *Texas* v. *Brown*, 460 U.S. 730, 737 (1983). Under this doctrine, a police officer who is lawfully conducting a search, may seize evidence of criminal activity in plain view that he comes upon inadvertently when it is immediately apparent that the items are incriminating. *Coolidge*, 403 U.S. at 466-71.

In *Lugar* v. *Commonwealth*, 214 Va. 609, 613, 202 S.E.2d 894, 898 (1974), we held that officers who were lawfully on the premises to search for a fugitive could properly seize any contraband visible to them as they looked for him. We remanded the cause for a determination, *inter alia*, of what evidence was admissible under the "plain view" doctrine as thus explicated. Conversely, if the evidence is not in plain view or if its discovery is not inadvertent the doctrine does not apply. Thus, we have held that officers could not under the "plain view" doctrine "search into 'spaces which obviously could not hide' the things which were the legitimate objects of the search." *Holloman* v. *Commonwealth*, 221 Va. 947, 949, 275 S.E.2d 620, 622 (1981) (quoting *Lugar*, 214 Va. at 611-12, 202 S.E.2d at 897).

Obviously, in searching for a partial sheet of coins, or for loose coins detached from a sheet, the officers could look into every part of the building and its hiding places, regardless of size. The officers in *Lugar* could lawfully search only those places on the premises where a man might conceal himself. No such limitation impeded the search in the present case. A sheet of dimes or a collection of loose dimes might have been hidden in one or more boxes of diminutive size. Therefore, we conclude that any contra-

band that became visible to the officers in their search for the coin collection was seizable.

The "plain view" rule would apply in this case, whether the seized articles were hidden or found in the open, so long as the officers discovered them inadvertently while looking for the coins. Moreover, after seeing, in the trunk of the automobile parked in the garage, sterling silver objects in the pillowcase and the ammunition, gloves, tools and equipment that could be used for burglaries, the officers were justified in concluding that the entire building was a repository for stolen goods.

■ Blair says that, assuming the search was valid, the seizure of the gold chain was unlawful because the chain was neither a weapon nor contraband, and the officers did not know it was stolen. Blair also notes there is no evidence that the chain was in plain view, but as we have demonstrated, in view of the object of the search, the "plain view" doctrine would apply even if the seized item was hidden before the officers uncovered it in the course of their search.

If only the chain had been discovered in the search, the Commonwealth concedes, it might not have been seizable. But the chain was one of 622 items seized. In *State* v. *Wilson*, 279 Md. 189, 367 A.2d 1223 (1977), cited by Blair, 20 to 25 items, including television sets, speakers, one or two clock-radios, stereo equipment, and a camera were observed in plain view during a search under a search warrant for narcotics and narcotics paraphernalia. The officers "jotted down" the serial numbers and later found that some of the items had been stolen. The Maryland court held that the recordation of the serial numbers was a seizure, that the large quantity of equipment justified no more than a mere suspicion that the goods were stolen, that there was only a remote nexus between the items seized and the object of the narcotics search, and that the seizure was invalid. *Id.* at 193-98, 367 A.2d at 1226-29.

In the present case, however, before searching the second floor the officers had already discovered silver and jewelry which they had probable cause to believe was stolen. They had entered the building under a search warrant based upon probable cause to believe that the fruit of a specified burglary and larceny was hidden therein, but they found what they reasonably believed might be the fruits of various larcenies. They had probable cause to believe that the similar articles of silver and jewelry on the second floor

were also the fruits of larcenies.[2] The number of items discovered in the search and seized was overwhelming, and there was in this case, unlike *Wilson*, a close nexus between the object of the search, stolen coins, and the silver, coins, and jewelry inadvertently discovered. As it could reasonably be inferred from the evidence that the building was an operating base for a gang of thieves, the officers were justified in believing that the thin gold necklace, obviously designed for use by a woman, was stolen. We hold, therefore, that the trial court did not err in ruling that it had been lawfully seized.

■ Blair further argues that the chain was not adequately identified to be admitted in evidence. We disagree. The record shows that about six months after the burglary and larceny at the Hawkins's residence, both Mrs. Hawkins and her husband had identified the chain as hers. At trial, Mrs. Hawkins testified to the characteristics of the chain seized in the search that were identical to those of the one stolen from her jewelry box. Hunnell testified that he and Walker, assisted by Blair, stole jewelry from the Hawkins's home. The trial court correctly ruled that the chain was admissible and that the question of identity affected the weight of the evidence rather than its admissibility. *See Stamper* v. *Commonwealth*, 220 Va. 260, 269-70, 257 S.E.2d 808, 815 (1979), *cert. denied*, 445 U.S. 972 (1980); *Cook* v. *Commonwealth*, 214 Va. 686, 204 S.E.2d 252 (1974).

For the reasons assigned, we will affirm the judgment of the trial court.

*Affirmed.*

---

[2] There is no requirement under the "plain view" doctrine that the police must, as Blair argues, know that an item is stolen in order to seize it lawfully. Rather, probable cause to believe the property is associated with criminal activity is all that is required. *See Texas* v. *Brown*, 460 U.S. 742 (1983). In *Brown*, the plurality opinion of Justice Rehnquist held that a police officer, who observed an uninflated, tied-off party balloon, and who was aware that balloons of that type are frequently used to carry narcotics, had "probable cause to believe that the balloon . . . contained an illicit substance" and, therefore, his seizure of it was not unconstitutional. *Id*, at 742. The other Justices agreed that probable cause authorized the seizure under the "plain view" doctrine. *See id*. at 746 (Powell, J., concurring); *id*. at 751 (Stevens, J., concurring).