574 A.2d 348

**Andrew Wayne HIPPLER**

v.

**STATE of Maryland.**

**No. 1510, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 5, 1990.

M. Gordon Tayback, Baltimore, for appellant.

Margaret M. Schweitzer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Thomas K. Clancy, Asst. Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on the brief), for appellee.

Argued before MOYLAN, WILNER and CATHELL, JJ.

CATHELL, Judge.

This appeal arises from the conviction of appellant, Andrew Wayne Hippler, in a court trial, of possession with intent to distribute a controlled dangerous substance. The charges against Hippler resulted from his presence in an Anne Arundel County residence which was searched by police officers who had obtained a warrant, based upon probable cause to believe that the residence contained quantities of a controlled dangerous substance and items related to the distribution of a controlled dangerous substance.[1] Appellant was not a permanent occupant of the home, but was preparing to move there temporarily. He was installing tile in the basement of the residence when the warrant was executed.

---

1. The validity of the warrant is not at issue in this appeal.

According to the testimony of Detective Tabor, who made the arrest, upon entering the residence to execute the warrant he detected the strong odor of phencyclidine, more commonly known as PCP. Detective Tabor entered the basement, observed Hippler, and advised him to "take a prone position against the wall" of the basement. When Hippler complied with this request, Detective Tabor noticed a red cap or top which he believed to be that of a small bottle, such as a vanilla extract bottle or a food coloring bottle, protruding from the right front pocket of Hippler's pants. Tabor related at trial that, as soon as he saw the red cap of the bottle, he was "quite sure" that it was an extract bottle used to carry liquid PCP.[2] This observation, combined with the fact that he was in the house to search for PCP, and that the odor of that substance pervaded throughout the house, rendered Tabor "quite confident" that the bottle contained PCP. Based upon that belief, Tabor removed the bottle from Hippler's pocket.

Hippler was not under arrest at the time the bottle was removed from his clothing, but was arrested soon thereafter. The contents of the bottle were analyzed and found to be PCP. Hippler was later charged in a two-count indictment of possession of a controlled dangerous substance and possession with intent to distribute a controlled dangerous substance. Appellant moved to suppress the seizure of the bottle, but the trial court denied that motion at the March 20, 1989 hearing.

The trial before the court on the charges against Hippler took place on May 2, 1989. Hippler conceded to the charge for possession of PCP, but argued that the evidence was insufficient to demonstrate possession with intent to distribute a controlled dangerous substance. Hippler testified that the PCP in the bottle was for his personal use. The court, however, determined that the evidence was sufficient

---

**2.** Detective Tabor was duly qualified at trial as an expert regarding controlled dangerous substances, and it was established that he had previously testified as an expert concerning PCP.

to warrant a conviction on the count for possession with intent to distribute a controlled dangerous substance. Appellant was sentenced on August 10, 1989, to ten years imprisonment, the mandatory minimum sentence prescribed by Md.Ann.Code art. 27, § 286(c)(1) and (2), since the court found that he was a repeat offender even though he contended that the State had not sufficiently proved his alleged prior offense.

Hippler raises three issues on appeal:

1. Prior to trial, did the court err in denying his motion to suppress?

2. At trial, did the court err in finding sufficient evidence of possession with intent to distribute?

3. At sentencing, did the trial court err in finding that the State properly proved his previous conviction?

We perceive no error on the part of the trial court with regard to any of these issues, and therefore we affirm. We address the issues in the order in which they were raised and supplement the facts we have previously set out as is necessary.

### Suppression of Evidence

▮ Preliminarily, we note that the officers executing the search warrant had the authority to detain Hippler and the others in the house. The Supreme Court, in *Michigan v. Summers*, 452 U.S. 692, 706, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981), opined that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." In addition, the propriety of Detective Tabor's search of Mr. Hippler for weapons is not questioned. At the hearing on the motion to suppress, defense counsel conceded the detective's right to conduct a "pat down" search of Mr. Hippler for purposes of "safety and protection."

Appellant contends that the trial court erred in denying his motion to suppress evidence of the bottle containing

PCP which the police detective seized. He asserts that there was insufficient probable cause to justify the search and seizure. We disagree.

In the case at bar, Detective Tabor, an experienced police officer, proceeded to the residence to execute a warrant to search for and seize narcotics. Outside, he spoke with the person named in the warrant, whom Detective Tabor knew to have been involved with drugs. Upon entering the residence, Detective Tabor was confronted with a strong odor of PCP. These circumstances, coupled with his observation of the red top of a bottle, like those he knew to be used to contain PCP, protruding from the pants pocket of a person whom he was about to search for weapons, provided Detective Tabor with sufficient probable cause to remove the bottle from Hippler's pocket under the Plain View Doctrine.

The doctrine of plain view was established by the Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The elements necessary for a valid warrantless [3] seizure under the Doctrine, as set out in *Coolidge*, and as summarized in *Texas v. Brown*, 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983), are as follows:

(1) The police officer must lawfully make an *initial intrusion* or otherwise properly be in a position from which he can view a particular area.

(2) The officer must discover incriminating evidence *inadvertently*, which is to say, he may not know in advance the location of certain evidence or contraband and intend to seize it, relying on the plain view doctrine only as a pretext.

(3) It must be *immediately apparent* to the police that the items they observe may be evidence of a crime,

---

**3.** While the officers had a warrant to search the residence and its owner, and to obtain evidence of illegal drug activity, the search of Mr. Hippler's person was still a warrantless search.

contraband, or otherwise subject to seizure.[4]

The first element of a valid plain view seizure, a valid initial intrusion, is easily met in this case since the officers had obtained a warrant to enter the house. Justice Stewart, writing in *Coolidge,* remarked:

> An example of the applicability of the "plain view" doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character.

403 U.S. at 466, 91 S.Ct. at 2038. The situation in the case at bar is analogous to that described by Justice Stewart.

To fall within the scope of the plain view doctrine, Detective Tabor's spotting of the bottle must have been inadvertent. *The Random House Dictionary of the English Language* 719 (Unabridged ed. 1983), defines the term "inadvertent" as "unintentional". Detective Tabor testified at the suppression hearing concerning the manner in which he came to discover the red bottle top protruding from Mr. Hippler's pocket.

Q Okay now when you got to the club section of the basement then, what, if anything, happened?

A I—I saw that the person on the floor was already secured, and I observed Mr. Hippler and I advised him to take a prone position up against the wall which would have been on the west side of the resi—east side of the residence.

---

4. Justice Rehnquist, writing for the Court in *Brown,* noted that "the Coolidge plurality discussion of plain view ... has never been expressly adopted by a majority of this Court." *Brown,* 460 U.S. at 737, 103 S.Ct. at 1541. The question as to the requirement of probable cause for a valid plain view search and seizure, however, was resolved in *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), in which the Supreme Court stated emphatically: "We now hold that probable cause is required." 107 S.Ct. at 1153. The Court of Appeals of Maryland, as early as 1977, in *State v. Wilson,* 279 Md. 189, 367 A.2d 1223 (1977), held that probable cause to believe that the item in question is incriminating is required before the plain view doctrine will be invoked. *Id.* at 195, 367 A.2d 1223.

Q  Okay, what happened after that?

A . He did—at that point I looked down and I observed protruding from the top of his right hand pants, his pants appeared to be somewhat tight. The top, it would be like—if you can see, Your Honor—

Q  You might have to stand up.  Yeah.

COURT: Alright.

A  He was standing.  His pants were a little tight, maybe a little tighter than mine.  It had like a square pocket and like from the top, just the very top I saw a small red cap about the size of a dime.

Detective Tabor was not searching Mr. Hippler for drugs, he was "securing" him, or searching him for weapons, and in the process, he observed the tightness of the subject's pants and the protruding red bottle top.  The discovery of the evidence, therefore, was inadvertent.

The critical inquiry thus becomes whether Detective Tabor had the requisite probable cause for believing that the red bottle cap which he observed in Hippler's pocket was evidence of a crime.  The Supreme Court, in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), stated that

> probable cause is a flexible, common-sense standard.  It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false."

*Brown*, 460 U.S. at 742, 103 S.Ct. at 1543 (citation omitted). The Court of Appeals, in *Doering v. State*, 313 Md. 384, 545 A.2d 1281 (1988), also addressed the question of what constitutes probable cause as it relates to a warrantless arrest.  Quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949), the Court in *Doering* stated:

"In dealing with probable cause ..., as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*Doering,* 313 Md. at 403, 545 A.2d 1281.

The testimony at the suppression hearing took place as follows:

COURT: Saw what kind of a cap?

A   A red cap.

COURT:  A red cap.

A   Like the top of a bottle.  I recognized the top of the cap.

Q   Umhmm.

A   Being consistent with that of a[n] extract bottle.

Q   Okay, what, if anything, did you do then when you saw that red cap of the bottle?

A   As soon as I saw that, I was *quite sure* that's what it was, the extract bottle, since I was there for the purposes of PCP, I pulled it from his pocket.

Q   Okay.  Were there any—

COURT: How did you know it wasn't extract?  How did you know it wasn't—he went to the store, the A & P store and bought himself some extract?

A   Considering I was there for the warrant, also considering the odor I smelled.   [emphasis added]

The trial judge, denying Mr. Hippler's motion to suppress, ruled as follows:

COURT: I'm going to deny your Motion to Suppress.  I really believe that with the smell of this odor of PCP the officer being knowing [sic] as an expert, knowing this smell and then seeing the top of the extract bottle, putting them together in his mind, he felt for sure that's what it was and that in fact—well, forgetting about what it ultimately turned out to be, that he had certainly a probable cause.  I am going to find that the search was valid.

We find no error in the trial court's ruling. The circumstances surrounding the issuance and execution of the warrant, combined with the odor of PCP in the house, the type of bottle which Detective Tabor plainly observed protruding from Mr. Hippler's pocket, and his knowledge and experience regarding narcotics investigations provided Detective Tabor with the requisite probable cause necessary to effect a valid seizure of the bottle under the plain view doctrine.

The case at bar is distinguishable on its facts from several recent cases decided by this Court, the Court of Appeals and the Supreme Court in which probable cause has been found *not* to exist. The Supreme Court, in *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), addressed the application of the plain view doctrine. *Hicks* involved police officers who entered an apartment pursuant to a report that a gun had been fired through its floor, the bullet striking and injuring someone below. In addition to retrieving a ski mask and assorted weaponry, one of the officers observed some expensive stereo equipment, which seemed out of place in the otherwise squalid and sparsely furnished apartment. Suspecting the equipment to be stolen, he recorded the serial numbers, moving some of the equipment in order to gain access to the numbers. He phoned his headquarters and confirmed that the equipment had been stolen in a recent armed robbery. He then seized the equipment immediately, without first obtaining a warrant.

The Arizona trial court granted Hicks' motion to suppress the evidence that had been seized, and the Court of Appeals of Arizona affirmed, both rejecting the State's argument that the warrantless seizure was justified under the plain view doctrine. The Supreme Court affirmed the decision in a plurality opinion and addressed in detail the question of plain view, holding that probable cause is necessary to invoke the plain view doctrine.

Justice Scalia, writing for the majority, found that the moving of the equipment did constitute a search separate

and apart from that for the shooter. "It is clear ... that the search here was valid if the 'plain view' doctrine would have sustained a seizure of the equipment." *Id.* at 107 S.Ct. 1153. The Court went on to say that, "[t]here is no doubt that it would have done so if Officer Nelson had probable cause to believe that the equipment was stolen. The State has conceded, however, that he had only a 'reasonable suspicion,' by which it means something less than probable cause."[5] *Id.* at 1153.

The element present in the case sub judice which distinguishes it from *Hicks* is Detective Tabor's probable cause, based on the totality of the circumstances he observed, to believe that the extract bottle contained PCP. The police officer in *Hicks* entered the home to investigate a shooting, and happened upon the stereo equipment, but he had nothing more than a "reasonable suspicion" that the items were stolen. Detective Tabor, however, was "quite certain" that the bottle was evidence of a crime.

*DiPasquale v. State,* 43 Md.App. 574, 406 A.2d 665 (1979), involved a police officer who observed an individual who was apparently under the influence of an intoxicating drug. He further observed a plastic baggie, containing what appeared to be a few grains of a tobacco-like substance, partially protruding from the top, zippered portion of the appellant's clothing. The officer removed the baggie and subsequently arrested the individual for possession of marijuana. We reversed the trial court's denial of the appellant's motion to suppress the physical evidence.

The crucial fact which distinguishes *DiPasquale* from the case at bar is that, in *DiPasquale,*

---

**5.** The Court notes that a seizure can sometimes be justified on less than probable cause where the seizure is "minimally intrusive and operational necessities render it the only practicable means of detecting certain types of crime." *Hicks,* 107 S.Ct. at 1154. The State alleges no operational necessities which would justify the warrantless seizure, but rather it alleges "the mere fact that the items in question came lawfully within the officer's plain view. That alone cannot supplant the requirement of probable cause." *Id.* at 1154.

[o]n cross-examination, the officer acknowledged that *at the time he seized the baggie, he did not know nor even suspect that it contained anything other than cigarette tobacco.* There [was] nothing in [the] record demonstrating that the officer [there] believed that the bag which he observed partially in open view was evidence of crime. . . .

\* \* \* \* \* \*

[T]hat the visual, olfactory and auditory observations preceding the actual seizure might have been enough to give some other officer probable cause to believe that the partially observed baggie was, indeed, the repository of probable marijuana is . . . beside the point. It is necessary that such belief abide in the seizing officer.

*Id.* at 577–78, 406 A.2d 665 (emphasis added). Detective Tabor, on the other hand, specifically testified that, *before* he removed the bottle from appellant's pocket, he was "quite confident" that the bottle contained PCP.

Detective Tabor's confidence that the object he observed was evidence of a crime also distinguishes the circumstances of the seizure of the bottle from Hippler from the seizure which was the subject of the recent Court of Appeals decision in *Riddick v. State,* 319 Md. 180, 571 A.2d 1239 (1990). Riddick was accosted by police detectives in the Baltimore City Amtrak station because he fit the profile of a drug courier. The detectives asked to speak to him and when he agreed, they accompanied him to an interview room where Riddick placed the duffel bag which he was carrying on a table.

In response to questions from the detectives, Riddick opened the bag and took out a sweatshirt. Without touching the bag, one of the detectives glanced inside it and observed a one-quarter gram, silver measuring spoon with a "whitish powder substance on it" inside the duffel bag. There were no other powder or drugs visible inside the bag. The testimony revealed that about 15 seconds elapsed before the detective realized that the white powder might be a drug. He removed the spoon from the bag *during* that 15 second interval. The detective arrested Riddick soon after

he removed and examined the spoon. Simultaneously, another detective noticed a bulge in Riddick's pants, which Riddick attempted to explain away as his "private parts". Unconvinced, the detective felt the bulge and found it to be soft and cylindrical. Upon reaching into Riddick's pants, the detective retrieved Ziplock plastic bags containing a white powder. Chemical analysis proved it to be heroin. Riddick's motion to suppress this contraband was denied and the contraband was the basis for his conviction.

The key difference between the seizure of the spoon from Riddick's bag and the seizure of the bottle from Hippler's pocket in the case at bar is that the trial judge in *Riddick* "found as a fact that there was no basis on which to determine the existence of probable cause to arrest Riddick until the spoon had been removed from the bag and examined more closely." *Riddick*, at 202, 571 A.2d 1239. Conversely, in the case at bar, Detective Tabor testified that he was "quite certain" *before* he removed the bottle that it contained contraband. In addition, the trial judge specifically found that in view of the search warrant issued to search the residence for drugs, the odor of PCP in the residence, and the detective's observation of the top of the extract bottle, the detective "felt for sure" that the bottle contained PCP. The testimony of Detective Tabor, in the case at bar, who testified that he was "quite certain" *before* he removed the bottle from Hippler's pocket that it was evidence of a crime, stands in stark contrast to the detective's testimony in *Riddick*, where he stated that *after* he commenced removal of the spoon from the duffel bag he realized that the white powder might be a drug. In the case at bar, therefore, the third requirement for a valid plain view search and seizure, probable cause to believe that the item observed is incriminating, is complied with, and we affirm the finding of the trial judge in that regard.

### Sufficiency of the Evidence

█ Appellant asserts that the evidence adduced at trial was insufficient to sustain his conviction for possession of PCP with intent to distribute. We disagree.

As we stated in *Salzman v. State,* 49 Md.App. 25, 55, 430 A.2d 847, *cert. denied,* 291 Md. 781 (1981), an "[i]ntent to distribute controlled dangerous substances is 'seldom proved directly, but is more often found by drawing inferences from facts proved which reasonably indicate under all the circumstances the existence of the required intent.' " Likewise, an intent to distribute may be indicated by the very quantity of narcotics possessed. *Id.*

Detective Tabor testified that applying liquid PCP to parsley flakes is the most common way of using the drug in Anne Arundel County. Used in that manner, the PCP contained in the bottle seized from Mr. Hippler had a street value of $1600, and would make approximately 160 joints. He further testified that another method of using PCP is to use a normal cigarette as a "dipper" and dip it into the bottle of PCP. The cigarette, also called a "Sherman," is then smoked. The bottle contained enough PCP to make 20 to 30 dippers, which would sell for about $50 each. Depending on the individual, 3 to 6 "hits" or drags from the dipper are normally required to receive the effect of the drug. The dipper is then extinguished and saved for later.

Hippler testified that the PCP in the bottle was for his personal use only. He stated that he could get 20 to 25 dippers from the amount of PCP seized, and that he could smoke 15 dippers a day. He had been a PCP user for 15 to 20 years and had a very high tolerance for the drug.

Detective Tabor stated that, based on his experience, a person who smoked 15 dippers a day could not function. "I don't see how he could function period. Walk, talk and barely breathe. I have seen people under one-half a dipper, their tongues are so thick they can't even talk." He further testified that the amount of PCP seized from Mr. Hippler could easily have been a 30–day supply to a regular user. When questioned about the frequency of purchases by a regular user, he testified that in his observations during undercover investigations at certain purchasing spots, he had observed the same buyers purchasing PCP on an almost weekly basis.

The trial judge stated that while he believed that a PCP addict could build up a tolerance to the drug, thus requiring more and more of the drug to achieve its effect, Mr. Hippler's credibility concerning the quantity of drugs his habit required was undermined by his incredulous testimony regarding the manner in which he came into possession of the drugs. Mr. Hippler testified that an unknown person drove up and gave him the bottle of PCP. The trial judge remarked that this explanation "destroys his credibility.... I find that beyond belief."

In a court trial, issues of credibility are left to the trial judge, who had a first-hand opportunity to observe the demeanor of the witness. We will not second-guess the trier of fact on issues of credibility. *Johnson v. State*, 238 Md. 643, 210 A.2d 399 (1965). Determinations by the trial judge regarding the weight to be accorded evidence and issues of witness credibility will not be disturbed on appeal unless clearly erroneous. *Byrd v. State*, 13 Md.App. 288, 283 A.2d 9 (1971); *Craig v. State*, 14 Md.App. 515, 287 A.2d 330 (1972). We perceive no error in the trial judge's assessment of Mr. Hippler's credibility.

The standard to be applied in determining the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See also, Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830 (1980). Applying this standard, we find that the evidence was sufficient to sustain Mr. Hippler's conviction of possession of PCP with intent to distribute.

### Repeat Offender Status

Mr. Hippler's last assertion of error has little merit. He maintains that the State failed to prove, beyond a reasonable doubt, as required by the holding in *Middleton v. State*, 67 Md.App. 159, 506 A.2d 1191, *cert. denied*, 308

Md. 146, 517 A.2d 771 (1986), that he qualified as a recidivist, under Md.Ann.Code art. 27, § 286(c)(1) and (2).

The State presented a certified copy of an indictment from Howard County, showing that, on March 17, 1988, Hippler was charged with having possessed PCP with intent to distribute on March 11, 1988. Also produced was a certified copy of a docket entry, related to the March 17 charge, showing that Hippler was convicted on August 1, 1988 of possession with intent to distribute PCP. Detective Hammond, of the Howard County Police Department, testified that he made the arrest in the Howard County case, and that the same Hippler who was on trial in this case was the man he arrested in that case.

The appellant presented no evidence, but argued that the State had failed to meet its burden of proving the Howard County conviction, because Detective Hammond did not attend the Howard County trial. The trial judge ruled that the State had, indeed, met its burden by putting Detective Hammond on the stand to state that Hippler was the person he had arrested on the earlier charge, and by offering the documentary evidence. Further, if Hippler sought to establish some sort of fraud, it was his responsibility to put on some evidence of it. He chose not to put on any evidence relating to this matter.

As with any question of fact, the test for sufficiency of the evidence on matters of prior convictions for purposes of determining the applicability of recidivist statutes is whether any rational trier of fact could find the evidence sufficient beyond a reasonable doubt. *Middleton, supra,* 67 Md.App. at 176, 506 A.2d 1191. We find that the evidence produced by the State was sufficient for a finding that Mr. Hippler was a repeat offender; hence, the statutory requirements were met and the enhanced sentence was proper.

JUDGMENT OF THE TRIAL COURT AFFIRMED; COSTS TO BE PAID BY APPELLANT.