744 A.2d 1094

**Eric VENEY**

v.

**STATE of Maryland.**

**No. 6977, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Feb. 2, 2000.

138

Gina M. Serra, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before EYLER, SONNER, and PAUL E. ALPERT (Ret., specially assigned), JJ.

EYLER, Judge.

Appellant, Eric Veney, was convicted by a jury sitting in the Circuit Court for Baltimore City of possession with intent to distribute cocaine, possession of cocaine, possession with intent to distribute heroin, and possession of heroin. He was sentenced to concurrent terms of ten years, to be served without the possibility of parole, for each of the possession with intent to distribute convictions. The remaining convictions were merged. Appellant noted a timely appeal and presents the following questions for our review:

I. Was the evidence sufficient to support appellant's convictions for possession with intent to distribute?

II. Did the trial court impose an illegal sentence?

## FACTS

On the morning of August 1, 1997, Baltimore City Police Officer Mark Holmen and his partner, Kurt Roepke, were on uniformed bicycle patrol. At approximately 10:00 a.m., the officers were in the 1900 block of Castle Street when Officer Holmen observed a group of about five people in the backyard area of the 2000 block of Cliftwood, which faces Castle Street. At trial, the officer described it as "a high drug area." The individuals he saw were yelling "Five–0," which he explained was "a street term used to notify the criminal element that the police are in the area." As the officers traveled down the street, Officer Holmen observed twenty-five to thirty individuals "scattering" and "[d]ispersing."

When Officer Holmen looked down the street, he observed a man, later identified as appellant, standing in front of 1909 North Castle Street and holding a plastic bag that contained a white substance. The officer estimated that he was thirty feet from appellant at that time. Officer Holmen pointed out appellant to Officer Roepke, and the officers proceeded toward him. As the officers approached appellant, he got on his hands and knees and reached into the basement window, which was missing the glass, of the vacant house located at 1909 North Castle Street. When the officers were only several feet from appellant, Officer Holmen observed that appellant's left hand was inside the basement window of the vacant house.

Officer Roepke, who testified as an expert in narcotics enforcement investigation, stated that he observed appellant "put his hand on the corner and then reach[ ] both hands through the window." The officer further stated that the vacant house was full of trash and debris and that he saw appellant pull up a carpet and place a plastic bag underneath it. From underneath the carpet, Officer Roepke recovered a

plastic bag containing two green-topped vials of a white rock-like substance that the officers suspected was cocaine. Officer Roepke then checked where appellant had placed his hand "up in the window sill" at the corner and recovered a bag that contained forty-three gel capsules and fifty red-topped vials. Subsequent laboratory analysis determined that the gel capsules contained heroin and that the green-topped and red-topped vials contained cocaine.

Officer Roepke further testified that the different colors on the vial tops could indicate a different seller or different tester. He explained that, on the first of the month, when individuals receive their paychecks, distributors may give out a small sample of their product. The officer further stated that the quantities of forty-three gel capsules and fifty-two vials were consistent with distribution and not personal use.

In the defense case, Angela Proctor testified that she was with appellant on the morning in question. According to Ms. Proctor, she was standing with appellant when the police rode by two times on their bikes. On the third trip, the police stopped, got off their bikes, and looked in the window at 1909 Castle Street. One of the officers then approached appellant and escorted him up the street. An officer pulled the bags out of the window and appellant was arrested. Ms. Proctor testified that she had not seen appellant go to the window.

## DISCUSSION

### I.

Appellant first contends that the evidence was insufficient to sustain his convictions for possession with intent to distribute, as the State failed to establish that he was aware of the second bag of drugs that contained forty-three gel capsules of heroin and fifty red-topped vials of cocaine. He stresses that Officer Roepke did not see him in possession of that bag, that the area is known for a high concentration of drugs, that the vacant house was full of trash and debris, and that the drugs were not in plain view. Appellant also relies on Officer Roepke's testimony that different sellers use different colored

vials and emphasizes that, although the officers observed him in possession of the baggie containing two green-topped vials, the second bag contained red-topped vials. Appellant concedes his possession of the two green-topped vials of cocaine but claims there was no evidence that he was attempting to sell or distribute them because the officers did not observe him engaging in any hand-to-hand transactions and no money, pager, or tally sheets were found on his person when he was arrested.

■ At the close of the State's case, defense counsel moved for judgment of acquittal, stating only: "We'll make a motion on all counts, Your Honor, and submit." At the close of all the evidence, defense counsel again moved for judgment and stated: "We would renew the motion and submit." No argument was presented in support of the motion; therefore, the sufficiency of the evidence is not properly before us. *See Johnson v. State,* 90 Md.App. 638, 649, 602 A.2d 255 (1992) (citing *Brooks v. State,* 68 Md.App. 604, 611, 515 A.2d 225 (1986), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987)) ("a motion which merely asserts that evidence is insufficient to support a conviction, without specifying the deficiency, does not comply with Rule 4–324, and thus does not preserve the issue of sufficiency for appellate review"); *Parker v. State,* 72 Md.App. 610, 615, 531 A.2d 1313 (1987) ("[M]oving for judgment of acquittal on the grounds of insufficiency of the evidence, without argument, does not preserve the issue for appellate review."). Nonetheless, we briefly address appellant's contentions.

■ The standard for our review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Wilson v. State,* 319 Md. 530, 535, 573 A.2d 831 (1990). The jury, as the trier of fact, may " 'draw reasonable inferences from basic facts to ultimate facts.' " *Barnhard v. State,* 86 Md.App. 518, 532, 587 A.2d 561

(1991), *aff'd*, 325 Md. 602, 602 A.2d 701 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Weighing the credibility of the witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *See Binnie v. State*, 321 Md. 572, 580, 583 A.2d 1037 (1991). In performing its fact finding role, the jury is free to accept the evidence that it believes and reject that which it does not. *See Muir v. State*, 64 Md.App. 648, 654, 498 A.2d 666 (1985), *aff'd*, 308 Md. 208, 517 A.2d 1105 (1986). "In this regard, it may believe one witness's testimony, but disbelieve another witness's testimony." *Shand v. State*, 103 Md. App. 465, 489, 653 A.2d 1000 (1995), *aff'd on other grounds*, 341 Md. 661, 672 A.2d 630 (1996); *see also Snyder v. State*, 104 Md.App. 533, 549–50, 657 A.2d 342, *cert. denied*, 340 Md. 216, 665 A.2d 1058 (1995) (stating that a jury resolves conflicts in evidence and evaluates witness's credibility).

██ To support a conviction for a possessory offense, the " 'evidence must show directly or support a rational inference that the accused did in fact exercise some dominion or control over the prohibited . . . drug in the sense contemplated by the statute, *i.e.*, that [the accused] exercised some restraining or directing influence over it.' " *State v. Leach*, 296 Md. 591, 595–96, 463 A.2d 872 (1983) (quoting *Garrison v. State*, 272 Md. 123, 142, 321 A.2d 767 (1974)). "The accused, in order to be found guilty, must know of both the presence and the general character or illicit nature of the substance. Of course, such knowledge can be proven by circumstantial evidence and by inferences drawn therefrom." *Dawkins v. State*, 313 Md. 638, 651, 547 A.2d 1041 (1988).

█ The following factors may be considered in determining whether appellant possessed the second bag of drugs: "1) proximity between the defendant and the contraband; 2) the fact that the contraband was within the plain view or otherwise within the knowledge of the defendant; 3) ownership or some possessory right in the premises or automobile in which the contraband is found; and 4) the presence of circumstances from which a reasonable inference could be

drawn that the defendant was participating with others in the mutual enjoyment of the contraband."

*Kostelec v. State,* 112 Md.App. 656, 672, 685 A.2d 1222 (1996), *vacated on other grounds,* 348 Md. 230, 703 A.2d 160 (1997) (quoting *Rich v. State,* 93 Md.App. 142, 150, 611 A.2d 1034 (1992), *vacated and remanded on other grounds,* 331 Md. 195, 627 A.2d 537 (1993) (citing *Folk v. State,* 11 Md.App. 508, 514, 275 A.2d 184 (1971))).

In the present case, the officers observed appellant in close proximity to the second bag of drugs. Officer Roepke testified that he recovered the second bag from the area where appellant had placed his hand at the corner of the window sill. This evidence sufficiently connected appellant to the second bag of drugs. In addition, although the vials in the bag that the officers observed in appellant's hand and that they found in the second bag had different colored tops, Officer Roepke testified that the color change may indicate a different tester as distributors give out samples of their product. It was adequately demonstrated that appellant was aware of the second bag of drugs and that the quantity of drugs recovered was consistent with distribution and not personal use; therefore, the evidence was sufficient to sustain appellant's convictions for possession with intent to distribute cocaine and heroin. *See Hippler v. State,* 83 Md.App. 325, 338, 574 A.2d 348, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990) (quoting *Salzman v. State,* 49 Md.App. 25, 55, 430 A.2d 847, *cert. denied,* 291 Md. 781 (1981)) ("[i]ntent to distribute controlled dangerous substances is 'seldom proved directly, but is more often found by drawing inferences from facts proved which reasonably indicate under all the circumstances the existence of the required intent.' Likewise, an intent to distribute may be indicated by the very quantity of narcotics possessed.")

## II.

Appellant next claims that the trial court erred in imposing sentences of ten years without the possibility of parole under

Md.Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Art. 27, § 286(c), for each of the possession with intent to distribute convictions. Appellant was convicted of violating a controlled dangerous substance law in 1991. Appellant contends that under *Thomas v. State,* 104 Md.App. 461, 656 A.2d 799 (1995), he could be sentenced to an enhanced penalty for his second conviction only and, thus, only one 10–year non-parolable sentence could be imposed.

The State claims that imposition of an enhanced sentence for each of the possession with intent to distribute convictions is permissible under the dictates of *Whack v. State,* 338 Md. 665, 659 A.2d 1347 (1995), and that *Thomas* is factually distinguishable from appellant's case.

▇▇▇▇ Although appellant did not object to thè sentence imposed, we may reach this question as an enhanced penalty imposed improperly is an illegal sentence. *See Bowman v. State,* 314 Md. 725, 727, 738, 552 A.2d 1303 (1989) (erroneous mandatory sentence that fails for a lack of proof of prior conviction is illegal); *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949 (1985) ("when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court"); *see also Butler v. State,* 46 Md.App. 317, 322, 416 A.2d 773, *cert. denied,* 288 Md. 743 (1980) (finding that although appellant did not object to proof at sentencing or findings of trial court that he fell within ambit of § 643B(c), "manifest injustice would result if we do not review the issue").

Appellant was sentenced under Md.Code (1957, 1996 Repl. Vol., 1999 Cum.Supp.), Art. 27, § 286(c) [1], which provides in relevant part:

> (c) *Sentencing.*—(1) A person who is convicted under subsection (b)(1)[2] or subsection (b)(2)[3] of this section, or of

---

**1.** Unless otherwise indicated, all references are to Article 27 of the Maryland Code.

**2.** Subsection (b)(1) of § 286 provides, *inter alia,* that any person manufacturing or distributing a Schedule I or II narcotic drug is guilty of a

conspiracy to violate subsection (b)(1) or (b)(2) of this section shall be sentenced to imprisonment for not less than 10 years and subject to a fine not exceeding $100,000 if the person previously has been convicted:

(i) Under subsection (b)(1) or subsection (b)(2) of this section;

(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section; or

(iii) Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection(b)(1) or subsection (b)(2) of this section if committed in this State.

(2) The prison sentence of a person sentenced under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section or any combination of these offenses, as a second offender may not be suspended to less than 10 years, and the person may be paroled during that period only in accordance with § 4–305 of the Correctional Services Article.

▮▮▮▮ The cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intent. *Montgomery County v. Buckman*, 333 Md. 516, 523, 636 A.2d 448 (1994); *Comptroller v. Jameson*, 332 Md. 723, 732, 633 A.2d 93 (1993). "The starting point in statutory interpretation is with an examination of the language of the statute. If the words of the statute, construed according to their common and every-day meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State*, 336 Md. 255, 261, 647 A.2d 1204 (1994) (citations omitted). Stated another way, "[w]hen the words of the

---

felony and subject to imprisonment for twenty years or a fine of not more than $25,000 or both.

**3.** Subsection (b)(2) of § 286 provides, *inter alia,* that any person manufacturing or distributing certain non-narcotic Schedule I or II drugs is subject to imprisonment for twenty years or a fine of not more than $25,000 or both.

statute are clear and unambiguous, we need not go further." *State v. Thompson*, 332 Md. 1, 7, 629 A.2d 731 (1993).

 "Language can be regarded as ambiguous in two different respects: 1) it may be intrinsically unclear ...; or 2) its intrinsic meaning may be fairly clear, but its application to a particular object or circumstance may be uncertain." *Town & Country v. Comcast Cablevision*, 70 Md.App. 272, 280, 520 A.2d 1129, *cert. denied*, 310 Md. 2, 526 A.2d 954 (1987). "That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled." *Tucker v. Fireman's Ins. Co.*, 308 Md. 69, 74, 517 A.2d 730 (1986).

 Section 286(c)(1) requires imposition of a sentence of not less than 10 years upon a person "convicted" under subsection (b)(1) or (b)(2) or for conspiracy to violate those subsections if the person has the required predicate conviction. Dropping down to subsection (c)(2), we are informed that the 10-year sentence may not be suspended and that it is, in essence, without parole.[4] Subsection (c)(2) begins with the words, "The sentence of a person...." The "sentence" is singular even though it may apply to "any combination" of the applicable "offenses." In common everyday language, "sentence" may refer to a sentence imposed on a single count or the number of years to be served when all sentences are totaled. Furthermore, the enhanced penalty applies only to a "second offender." The phrase is not defined, and we are left to question whether it covers only *the* second conviction or all convictions arising from a course of conduct that happens to be the defendant's second criminal episode involving the relevant drug charges. Accordingly, we must conclude that the statute, as applied to the circumstances before us, is unclear and ambiguous.

---

**4.** We recognize that an individual may be paroled under § 4–305 of the Correctional Services Article, but for ease of discussion, refer to the sentence as non-parolable.

"If a statute is clouded by ambiguity or obscurity, ... we must consider 'not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment,' in our attempt to discern the construction that will best further the legislative objectives or goals." *Gargliano v. State*, 334 Md. 428, 436,. 639 A.2d 675 (1994) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986)). In addition, "courts must read all parts of a statute together, with a view toward harmonizing the various parts and avoiding both inconsistencies and senseless results that could not reasonably have been intended by the Legislature." *Barr v. State*, 101 Md.App. 681, 687, 647 A.2d 1293 (1994); *see also Williams v. State*, 329 Md. 1, 15–16, 616 A.2d 1275 (1992) (stating that the court must discern "legislative intent from the entire statutory scheme, as opposed to scrutinizing parts of a statute in isolation"); *Calhoun v. State*, 46 Md.App. 478, 488, 418 A.2d 1241 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981) ("internal consistency between the various provisions of a statute must be maintained, and subsections must, therefore, be interpreted in the context of the entire statutory scheme"). Section 286(c) must also be considered in light of the construction the appellate courts of this State "have previously given to similarly worded enhanced penalty statutes, as 'statutes that deal with the same subject matter, share a common purpose, and form part of the same system are *in pari materia* and must be construed harmoniously in order to give full effect to each enactment.' " *Gargliano*, 334 Md. at 436, 639 A.2d 675 (quoting *State v. Loscomb*, 291 Md. 424, 432, 435 A.2d 764 (1981)).

Finally, § 286(c) is "a highly penal statute [and] must be 'strictly construed so that only punishment contemplated by the language of the statute is meted out.' " *Gargliano*, 334 Md. at 437, 639 A.2d 675 (quoting *Dickerson v. State*, 324 Md. 163, 172, 596 A.2d 648 (1991)). "An ambiguous penal statute is subject to the 'rule of lenity,' which requires that such statutes be strictly construed against the State and in favor of the defendant." *Gardner v. State*, 344 Md. 642, 651, 689 A.2d 610 (1997); *see also Calhoun*, 46 Md.App. at 488, 418

A.2d 1241 ("In construing a penal statute and in resolving a dispute over the severity of the penalty, a presumption arises in favor of the lesser penalty over the greater one."). "In the area of statutory enhanced penalties ... when we are uncertain whether the Legislature intended to authorize the imposition of an enhanced penalty in a particular situation, the presumption must be that the Legislature did not intend to do so." *Gargliano*, 334 Md. at 449, 639 A.2d 675; *see also Gardner*, 344 Md. at 651, 689 A.2d 610 (1997) (quoting *Monoker v. State*, 321 Md. 214, 222, 582 A.2d 525 (1990) (quoting *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958))) ("Lenity expressly prohibits a court from interpreting a criminal statute to increase the penalty it places on a defendant ' "when such an interpretation can be based on no more than a guess as to what [the Legislature] intended." ' "). Under the rule of lenity, only one enhanced penalty may be imposed under § 286(c) when there are multiple convictions arising from a single indictment or case.

The enhanced penalty may only be imposed upon the second conviction, and while either of appellant's possession with intent to distribute convictions so qualify, we conclude that both do not qualify. Prior cases addressing the imposition of enhanced penalties support this conclusion and lead us to believe that, although the statute is inartfully worded, the Legislature intended to impose only one enhanced penalty per criminal episode.

We begin by examining the meaning of "second offender." In *Calhoun v. State*, 46 Md.App. 478, 418 A.2d 1241 (1980), this Court addressed the meaning of "third conviction" in § 643B(c), which allows for a term of not less than twenty-five years, none of which may be suspended, upon conviction of a third crime of violence.[5] Calhoun had been convicted of two

---

5. Article 27, § 643B(c), as it read at the time of *Calhoun*, provided:
*Third conviction of crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result

counts of robbery with a deadly weapon and two counts of use of a handgun in commission of a crime of violence arising from two separate grocery store robberies. Although each of the offenses was a crime of violence, this Court concluded that § 643B(c) "mandates the imposition of one, and only one, sentence of not less than twenty-five years" upon proof of the predicate convictions and prior incarceration. *Id.* at 488, 418 A.2d 1241. We reached that conclusion, in part, because the plain language of the statute did not purport to cover third or subsequent offenses, that is, "third conviction" meant only *the* third conviction. *Id.; see also Jones,* 336 Md. at 257, 263, 647 A.2d 1204 (stating that in determining that, when defendant is convicted of more than one crime of violence arising from a single incident, sentencing court may select any one of the crime of violence convictions to enhance under § 643B(c), Court noted that "any one of those crimes could have been considered the defendant's third crime of violence conviction").

More recently, in *Thomas v. State,* 104 Md.App. 461, 656 A.2d 799 (1995), this Court answered the question of whether "second" as used in § 286(c) "really means 'second,' *i.e.,* 'next in order after the first in time or place; the ordinal of two' or whether it means anything more than 'first' and thus includes 'third.'" *Id.* at 466, 656 A.2d 799 (citation omitted). Although, as the State argues, *Thomas* is factually distinguishable, it is nonetheless instructive.

In that case, Thomas was sentenced under § 286(c) as a second offender. He had a prior conviction dating from 1992.

---

of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11 [now § 4–305 of the Correctional Services Article].

Today, § 643B(c) is substantially the same; however, a final sentence was added: "A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding conviction." In addition, under § 643B(f), a person may petition for parole upon reaching the age of 65.

His arrest on the charge leading to the conviction that was on appeal occurred in 1993, "within weeks" of another arrest on drug charges. Thomas was convicted and sentenced under the other 1993 charge to a non-suspendable, non-parolable 10 years before he was sentenced on the conviction on appeal. The imposition of another enhanced 10–year sentence for the conviction on appeal constituted his second sentence under § 286(c).

The genesis of § 286(c) was thoroughly set forth by then Chief Judge Wilner. Included in the discussion of legislative history was an acknowledgment in the Senate Judicial Proceedings Committee Report "that subsection (c) applies to a person 'convicted for the second time'...." 104 Md.App. at 468, 656 A.2d 799. This Court concluded that § 286(c) applied only to a sentence as a "second offender" and not a third. *Id.* at 469, 656 A.2d 799. Chief Judge Wilner wrote:

> There can be little doubt here as to the legislative intent. The General Assembly in 1988 repealed a statute that provided a mandatory 10–year minimum sentence upon a finding of any previous conviction in favor of a more structured approach of increasing mandatory sentences for a second, third, and fourth conviction. It was presumably aware of our holding in *Calhoun* that, where a statute prescribes an enhanced penalty for a "third" conviction, as opposed to a "second or subsequent" conviction, it allows that penalty only upon the one conviction that constitutes the third, and not upon any conviction beyond the second. The Legislature had a variety of language to choose from, in existing enhanced punishment statutes, and it chose specificity over generality. In 1991, when it amended § 286(c)(1) to include certain foreign convictions, it left unchanged the specific language "as a second offender" in the provision mandating a non-suspendable, essentially non-parolable sentence for persons previously convicted.

104 Md.App. at 470, 656 A.2d 799.

Now that it is clear second means, in fact, second, we are left to question what is meant by use of the word "offender,"

as opposed to "conviction," because in *Thomas* we were not confronted with multiple convictions arising out of a single case. To answer this question, we turn to our recent decision in *Diaz v. State,* 129 Md.App. 51, 740 A.2d 81 (1999). In that case, the trial court used § 293 to double Diaz's sentences on three counts.[6] Judge Thieme, writing for the Court, stated that "the statute is unambiguous given a straightforward application in a case involving a single count indictment, but, when the court is faced with a multi-count indictment, *i.e.,* when multiple infractions springing from a single course of conduct are tried together, the picture becomes obfuscated." (Op. at 81, 740 A.2d 81). This Court held that as the statute was ambiguous, multiple convictions arising from a single course of conduct may not each be enhanced under § 293. (Op. at 82, 740 A.2d 81). Judge Thieme then went on to discuss the statute, noting that the use of the word "offense" in § 293 "implies a single criminal drama, not the enhancement of each of the individual scenes as set forth in the particular counts of the indictment." (Op. at 83, 740 A.2d 81). When § 293 was examined in context with the rest of the controlled dangerous substance statute, it "appear[ed] that the scheme defines an 'offense' for the purpose of enhanced penalties as one indictable criminal episode. Enhancement is not available until a subsequent episode occurs on a subsequent date." (Op. at 85, 740 A.2d 81). In § 286(c), "offender" should be read in the same context.

The statutory scheme of § 286, as discussed in *Thomas,* also leads to the conclusion that only one enhanced sentence may

---

**6.** Section 293 states in part:
(a) *More severe sentence.*—Any person convicted of any offense under this subheading is, if the offense is a second or subsequent offense, punishable by a term of imprisonment twice that otherwise authorized, by twice the fine otherwise authorized, or by both.
(b) *Second or subsequent offense defined.*—For purposes of this section, an offense shall be considered a second or subsequent offense, if, prior to the conviction of the offense, the offender has at any time been convicted of any offense or offenses under this subheading or under any prior law of this State or any law of the United States or of any other state relating to the other controlled dangerous substances as defined in this subheading.

be imposed. Under § 286(d), if certain conditions are met, a non-suspendable, non-parolable 25–year term must be imposed upon a third conviction under subsections (b)(1) or (b)(2) or for conspiracy to violate those subsections. Section 286(e) requires imposition of a non-suspendable, non-parolable, 40–year sentence upon a fourth conviction "if the person previously has served 3 separate terms of confinement as a result of 3 separate convictions[.]" Under the interpretation proposed by the State, if a person is convicted of several crimes as a second offender, the resulting combined sentences, if run consecutively, could total a non-suspendable, non-parolable, term of incarceration greater than that permitted under §§ 286(d) & (e). In *Gargliano,* the Court of Appeals noted that "[t]he clear import of the language used throughout § 286 is that the Legislature sought to impose more stringent penalties on certain offenders who repeatedly persist in a pattern of criminal conduct." 334 Md. at 442, 639 A.2d 675. Allowing for a sentence of a second offender to be greater than that permitted for a third or fourth offender runs contrary to the purposes of enhanced penalty statutes. *See Calhoun,* 46 Md.App. at 489, 418 A.2d 1241 ("Common sense dictates that the sentence under § 643B(c) should be less severe than the mandatory life sentence under § 643B(b) wherein the predicates are more stringent.").

The State claims that under appellant's position, if appellant's conviction for possession with intent to distribute cocaine is considered his "second" conviction, then logically, his conviction for possession with intent to distribute heroin must be his "third" conviction, for which it could seek an enhanced penalty under § 286(d). The State bases its position on *Melgar v. State,* 355 Md. 339, 734 A.2d 712 (1999). In that case, Melgar was sentenced as a third offender under § 286(d).[7] The Court of Appeals determined that three predi-

---

7. Section 286(d) provides in relevant part:
 *Additional penalty for one or two pervious offenses.*—(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section or of conspiracy to violate subsection (b)(1) or subsection

cates must be met for imposition of the mandatory penalty under § 286(d): 1) the defendant "is presently convicted of violating or conspiring to violate § 286(b)(1) or (b)(2)"; 2) the defendant "has two prior convictions, not arising out of a single incident, for violating or conspiring to violate § 286(b)(1) or (b)(2)—or like offenses within another American jurisdiction"; and 3) the defendant "has served at least one term of confinement of at least 180 days in a correctional institution as a result of conviction of a previous violation of § 286 or § 286A." *Melgar*, 355 Md. at 344, 734 A.2d 712.

Melgar conceded that he had two prior convictions and that he had served more than 180 days of confinement. His term of confinement was 248 days, but he had served only 141 days in the Maryland Division of Correction and received credit for the 107 days he had spent in the county detention center during pretrial incarceration. Accordingly, he claimed that he had not served 180 days "as a result of conviction" as required by § 286(d). The Court of Appeals agreed, as the plain language of the statute required, that the minimum of 180 days be served as a result of a conviction. *Melgar*, 355 Md. at 348, 353, 734 A.2d 712. The Court wrote:

(b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years and subject to a fine not exceeding $100,000 if the person previously:

(i) Has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and

(ii) Has been convicted twice, where the convictions do not arise from a single incident:

1. Under subsection (b)(1) or subsection (b)(2) of this section;

2. Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section;

3. Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State; or

4. Of any combination of these offenses.

(2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with § 4–305 of the Correctional Services Article.

[T]he public policy goal of affording criminal offenders a meaningful chance at rehabilitation before subjecting them to mandatory, enhanced penalties and the incomplete availability of rehabilitative services to pretrial detainees underscore the purposefulness of the Legislature's choice of the phrase "as a result of conviction." In our view, this distinct statutory phrase reflects the legislative intent that time in pretrial detention neither suffice nor in any degree supplement the statutory prerequisite of a minimum 180 day term of prior confinement for imposing an enhanced penalty upon a three-time drug offender under § 286.

*Id.* at 352, 734 A.2d 712.

At first glance, the State's position, that under *Melgar*, one of appellant's convictions could serve as his "third" conviction and thus result in the imposition of the enhanced 25–year term under § 286(d), is appealing. Nonetheless, we note that in *Melgar*, the Court was not required to address the impact of subsection (3), which states: "A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding offense." Art. 27, § 286(d)(3). In addition, labeling one of appellant's convictions as his "third," as the state claims would occur, would run contrary to the purposes of enhanced penalty statutes. The means for achieving the deterrent effect of enhanced penalty statutes "is the provision of fair warning to previous offenders that if they continue to commit criminal acts after having had the opportunity to reform after one or more prior contacts with the criminal justice system, they will be imprisoned for a considerably longer period of time than they were subject to as first offenders." *Gargliano*, 334 Md. at 444, 639 A.2d 675. Imposing the enhanced 25–year sentence upon appellant as a "third" offender would have afforded him no opportunity to alter his behavior before imposition of the harsher sentence. In any event, we are not called upon to construe the impact of § 286(d) upon appellant's case. We merely note that we do not view *Melgar* as requiring the imposition of an enhanced

25–year term upon appellant as the State argues would be the result under our decision.

Finally, the State's argument that *Whack v. State*, 338 Md. 665, 659 A.2d 1347 (1995), controls the present case is untenable. In that case, Whack's sentence on one count was enhanced under § 286(c) and under § 293 on another count. The Court of Appeals held that " § 286(c) and § 293 may be applied in the same case to enhance the sentences on different counts." 338 Md. at 681–82, 659 A.2d 1347. In reaching that conclusion, the Court commented that "[t]he provisions of § 286(c) and § 293 each enhance a repeat drug offender's sentence in different ways." 338 Md. at 682, 659 A.2d 1347.

In the present case, the State seeks application of § 286(c) twice to appellant's sentences. *Whack* addressed only the application of § 286(c) and § 293 to a single case. We can discern nothing in *Whack* that endorses enhancement of separate counts under a single statute.

**JUDGMENTS AFFIRMED; SENTENCES FOR POSSESSION WITH INTENT TO DISTRIBUTE COCAINE AND POSSESSION WITH INTENT TO DISTRIBUTE HEROIN VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR RESENTENCING.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**